1 | **WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
2 | jgolden@wgfllp.com
Faye Rasch, State Bar No. 253838
3 | frasch@wgllp.com
650 Town Center Drive, Suite 600
4 | Costa Mesa, California 92626
Telephone    714-966-1000
5 | Facsimile    714-966-1002

6 | Attorneys for Chapter 7 Trustee
Weneta M.A. Kosmala

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:16-bk-14227-ES |
| DENNY ROY STEELMAN, | Chapter 7 |
| Debtor. | |
| WENETA M.A. KOSMALA, Chapter 7 Trustee of the Estate of Denny Roy Steelman, | Adv. No. 8:18-ap |
| Plaintiff, | **COMPLAINT:** |
| KEVIN LIEBECK, as executor of the Estate of DENNY ROY STEELMAN, KEVIN LIEBECK, as successor Trustee of the SURVIVORS TRUST, as under the 2010 STEELMAN INTER VIVOS TRUST, SHAUNAH LYNN STEELMAN, an individual and JODI DENISE STEELMAN, an individual, | **(1) FOR DECLARATORY RELIEF REGARDING PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541; (2) FOR TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. §§ 542 AND 543; (3) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(b) AND 550, AND CALIFORNIA CIVIL CODE §§ 3439.04(a)(1), 3439.07 AND 3439.09; (4) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(b) AND 550, AND CALIFORNIA CIVIL CODE §§ 3439.04(a)(2), 3439.07 AND 3439.09; (5) TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT (6) TO 11 U.S.C. §§ 548(a)(1)(A) AND 550; TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) AND 550;** |
| Defendants. | |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1190566v1

COMPLAINT

**(7)  TO PRESERVE AVOIDED
TRANSFERS PURSUANT TO 11 U.S.C.
§ 551; AND
(8)  FOR INJUNCTION PURSUANT TO 11
U.S.C. § 105**

Weneta M.A. Kosmala, the chapter 7 trustee ("the Trustee" or "Plaintiff") of the estate ("the Bankruptcy Estate") of Denny Roy Steelman ("Debtor"), respectfully alleges as follows:

<u>**STATEMENT OF JURISDICTION AND VENUE**</u>

1.      The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 323, 541, 542, 543, 548, 549, 550 and 551.  The instant adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E) and (O).

2.      Venue properly lies in this judicial district in that the civil proceeding arises under title 11 of the United States Code as provided in 28 U.S.C. § 1409.

3.      This adversary proceeding arises out of and is related to the case entitled *In re Denny Steelman*, a chapter 7 case current pending in the United States Bankruptcy Court, Central District of California, the Honorable Erithe A. Smith presiding ("the Bankruptcy Case").

<u>**PARTIES TO THE ACTION**</u>

4.      Plaintiff is the duly-appointed chapter 7 trustee of the Bankruptcy Estate.

5.      Plaintiff is informed, believes, and alleges that the Debtor is presently deceased.

6.      Plaintiff is informed, believes and alleges that Kevin Liebeck ("Liebeck") is the executor of the Estate of Denny Roy Steelman ("Probate Estate").

7.      Plaintiff is informed, believes, and alleges that Liebeck is the alleged successor trustee of the Survivor's Trust (defined below) as under the 2010 Steeleman Inter Vivos Trust (defined below).

8.      Plaintiff is informed, believes, and alleges that Shaunah Lynn Steelman ("Shaunah") is an individual residing in the state of California and is the daughter of the Debtor.

9.      Plaintiff is informed, believes, and alleges that Jodi Denise Steelman ("Jodi") is an individual residing in the state of California and is the daughter of the Debtor.

Welland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1

## STATEMENT OF STANDING

2    10.    Plaintiff has standing to bring this action pursuant to 11 U.S.C. §§ 323, 541, 542,

3    543, 549, 550, and 551.

4

## GENERAL ALLEGATIONS

5    11.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through

6    10, as though fully set forth herein.

7    12.    The Debtor filed his bankruptcy petition on October 13, 2016 ("the Petition Date").

8    13.    Plaintiff is informed, believes, and alleges that the 2010 Steelman Inter Vivos Trust

9    is a self-settled trust ("2010" Trust). A true and correct copy of the 2010 Trust is attached hereto

10    as **Exhibit "1."**

11    14.    Plaintiff is informed, believes, and alleges that the Survivor's Trust is embedded in

12    the 2010 Trust. Exhibit 1 at Article Five ("Survivors Trust").

13    15.    Plaintiff is informed, believes, and alleges that the Bypass Trust is embedded in the

14    2010 Trust.  Exhibit 1 at Article Six ("Bypass Trust").

15    16.    Less than six months prior to the Petition Date, the Debtor, as Denny R. Steelman, a

16    Married Man as His Sole and Separate Property, caused to be transferred the real property

17    commonly known as 1001 E. Washington Street, Santa Ana, California (the "Washington

18    Property") to "Denny R. Steelman, Trustee of the Bypass Trust Under the 2010 Intervivos Trust

19    Dated August 10, 2010, by Trust Transfer Deed (the "Washington Transfer Deed") recorded on

20    October 28, 2015, as instrument number 2015000560083.  A true and correct copy of the Transfer

21    Deed is attached hereto as **Exhibit "2."**

22    17.    Pursuant to the Washington Transfer Deed, (i) the transfer (the "Washington

23    Transfer") was for no consideration and (ii) made to a trust where the trustor (the debtor) was the

24    sole beneficiary.

25

26

27

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

18.     On December 17, 2015, and within two years prior to the Petition Date, the Debtor[1] caused to be transferred the real property commonly known as 1322 N. Logan Street, Santa Ana, California (the " 1322 Logan Property") to "Denny R. Steelman, Trustee of the Bypass Trust Under the 2010 Intervivos Trust Dated August 10, 2010, by Trust Transfer Deed (the "1322 Logan Transfer Deed") recorded on December 17, 2015, as instrument number 2015000638552. A true and correct copy of the 1322 Logan Transfer Deed is attached hereto as **Exhibit "3."**

19.     Pursuant to the 1322 Logan Transfer Deed the (i) the transfer (the 1322 Logan Property Transfer") was for no consideration and (ii) made to a trust where the trustor (the Debtor) was the sole beneficiary.

20.     On March 16, 2016, and within two years prior to the Petition Date, the Debtor caused to be transferred the real property located at 1326 N. Logan Street, Santa Ana, California (the "1326 Logan Property") to "Denny R. Steelman, Trustee of the Bypass Trust Under the 2010 Intervivos Trust Dated August 10, 2010, by Trust Transfer Deed (the 1326 Logan Transfer Deed") recorded on May 2, 2016, as instrument number 2016000192472. A true and correct copy of the 1326 Logan Transfer Deed is attached hereto as **Exhibit "4."**

21.     Pursuant to the 1326 Logan Transfer Deed the (i) the transfer (the "1325 Logan Property Transfer") was for no consideration and (ii) made to a trust where the trustor (the Debtor) was the sole beneficiary.

22.     On October 1, 2015, and within two years prior to the Petition Date, the Debtor as Denny R. Steelman, a Widower, caused to be transferred the real property located at 1045 Heritage Trail, Big Bear City, California (the "Heritage Property") to Denny R. Steelman, Trustee of the Bypass Trust Under the 2010 Steelman Inter Vivos Trust Dated August 10, 2010, by Trust Transfer Deed (the "Heritage Transfer Deed"), recorded on November 2, 2015, as instrument number 2015-0473029. A true and correct copy of the Heritage Transfer Deed is attached hereto as **Exhibit "5."**

---

[1] Prior to the transfer of the Logan real properties discussed in the following paragraphs, title to the property was held by Denny R. Steelman, Trustee of the Steelman Family Trust Dated March 30, 1993. The Trustee has not been able to obtain any information as to this trust, however whether the transfer was made by the debtor directly or as the trustee of the Family Trust is of no import, because the transfer documents dictate that the transfers we each made to a trust in which the Debtor was the sole beneficiary.

Weiland Golden Goodrich LLP

23.    Pursuant to the Heritage Transfer Deed, the (i) the transfer (the "Heritage Property Transfer") was no consideration and (ii) made to a trust where the trustee (the Debtor) was the sole beneficiary.

24.    The Washington Property Transfer, 1322 Logan Property Transfer, 1326 Logan Property Transfer and the Heritage Property Transfer are collectively referred to herein as the "Transfers."

25.    On October 1, 2015, the Debtor entered into a Real Estate Lease Agreement by and between the Debtor, as Landlord and ElectriTel Services, Inc., as Tenant for a **term of five (5) years** for the Washington Property, the 1322 Logan Property and the 1326 Logan Property.

26.    In other words, the Debtor was continuing to lease and benefit from the real property subject to the Transfers.

27.    Plaintiff is informed, believes, and alleges that, in accordance with the respective deeds, the Debtor remained the beneficiary owner of each of the real properties until he died.

28.    Plaintiff is informed, believes, and alleges that the Debtor died shortly after the filing of his bankruptcy case.

29.    Plaintiff is informed, believes, and alleges that Shaunah and Jodi assert an interest in the Washington Property, 1322 Logan Property, 1326 Logan Property and the Heritage Property (collectively "Real Property").

30.    However, in light of the foregoing facts, the Trustee asserts that the Real Property is property of the Estate.

## FIRST CLAIM FOR RELIEF

(For Declaratory Relief Regarding Property of the Estate

Pursuant to 11 U.S.C. § 541)

31.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 30, inclusive, as though fully set forth herein.

32.    Plaintiff is informed, believes, and alleges that the Debtor had a legal and equitable interest in the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property on the Petition Date.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

33.    By reason of the foregoing, Plaintiff is entitled to a declaration by the Court that the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property are property of the Estate pursuant to 11 U.S.C. § 541.

## SECOND CLAIM FOR RELIEF

### (For Turnover of Property of the Estate

### Pursuant to 11 U.S.C. § 542)

34.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.    Plaintiff is informed, believes, and alleges that the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property are in the possession, custody, and/or control of the Defendants, including, if any, the proceeds therein.

36.    Plaintiff is informed, believes, and alleges that Plaintiff may use or sell the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property pursuant to 11 U.S.C. § 363.

37.    Plaintiff is informed, believes, and alleges that the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property have value and benefit to the Estate.

38.    Pursuant to 11 U.S.C. § 542, Jody, Shauna and/or Liebeck must turnover and deliver the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property to Plaintiff.

39.    By reason of the foregoing, Plaintiff is entitled to turnover of the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property.

## THIRD CLAIM FOR RELIEF

### (To Avoid Transfers and Recover Intentionally Fraudulently

### Transferred Property Under 11 U.S.C. §§ 544(b) and 550,

### and Cal. Civ. Code §§ 3439.04(a)(1), 3439.07 and 3439.09)

40.    Trustee incorporates each and every allegation contained in paragraphs 1 through 39, inclusive, as though fully set forth herein.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Welland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    41.    Upon information and belief, the Transfers occurred during the seven-year period

2    immediately preceding the Petition Date.

3    42.    The Trustee is informed and believes, the Transfers were made with the actual intent

4    to hinder, delay or defraud the Debtor's creditors.

5    43.    The Trustee is informed and believes, creditors existed at the time of the Transfers

6    that remained unpaid as of the Petition Date.

7    44.    The Trustee is informed and believes, the Debtor made Transfers to or for the

8    benefit of the Debtor and Defendants.

9    45.    The Trustee is informed and believes, the Debtor received no or inadequate

10   consideration from the Defendants.

11   46.    The Trustee is informed and believes, and on that basis alleges, that at the time of

12   the Transfers, there was no obligation due and owing to the Defendants.

13   47.    The Debtor was insolvent at the time of the Transfers and/or was rendered insolvent

14   by virtue of the Transfers.

15   48.    The Trustee is informed and believes, and on that basis alleges, that Defendants are

16   insiders of the Debtor.

17   49.    By reason of the foregoing, the Transfers are avoidable, and Trustee is entitled to set

18   aside the Transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439(a)(1),

19   3439.07 and 3439.09 and Trustee is entitled to recover the Transfers or the value of the Transfers

20   for the benefit of the Estate pursuant to 11 U.S.C. § 550.

21                          **FOURTH CLAIM FOR RELIEF**

22                  (To Avoid Transfer and Recover Constructively Fraudulently

23               Transferred Property Under 11 U.S.C. §§ 544(b) and 550, and

24                     Cal. Civ. Code §§ 3439.04(a)(2), 3439.07 and 3439.09)

25   50.    Trustee incorporates each and every allegation contained in paragraphs 1 through

26   49, inclusive, as though fully set forth herein.

27

28

51.    The Trustee is informed and believes, at the time of the Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transaction.

52.    The Trustee is informed and believes, at the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond her ability to pay as they became due.

53.    The Trustee is informed and believes, the Transfers were made to and for the benefit of the Debtor and Defendants.

54.    The Trustee is informed and believes, the Debtor did not receive reasonably equivalent value for making the Transfers and did not make the Transfers in good faith.

55.    By reason of the foregoing, the Transfers are avoidable, Trustee is entitled to set aside the Transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439(a)(2), 3439.07 and 3439.09, and Trustee is entitled to recover the  Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

### FIFTH CLAIM FOR RELIEF

(To Avoid Transfers and Recover Intentionally Fraudulently

Transferred Property Under 11 U.S.C. §§ 548(a)(1)(A) and 550)

56.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 55, inclusive, as though fully set forth herein.

57.    The Trustee is informed, believes, and alleges that the Transfers occurred during the two-year period immediately preceding the Petition Date.

58.    The Trustee is informed, believes, and alleges that the Transfers were made with the actual intent to hinder, delay or defraud Debtor's creditors.

59.    The Trustee is informed, believes, and alleges that creditors existed at the time of the Transfers that remained unpaid as of the Petition Date.

60.    The Trustee is informed, believes, and alleges that Debtor made the Transfers to or for the benefit of the Debtor and Defendants.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    61.    The Trustee is informed, believes, and alleges that Debtor received no consideration
2  or inadequate consideration from the Defendants for the Transfers.

3    62.    The Trustee is informed, believes, and alleges that Debtor was insolvent at the time
4  of the Transfers and/or was rendered insolvent by virtue of the Transfers.

5    63.    The Trustee is informed, believes, and alleges that the Defendants are insiders of the
6  Debtor.

7    64.    The Trustee is informed, believes, and alleges that the Defendant did not take the
8  Transfers in good faith.

9    65.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set
10  aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(A), and Plaintiff is entitled to recover the
11  Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

12                              **SIXTH CLAIM FOR RELIEF**

13                    (To Avoid Transfers and Recover Constructively Fraudulently

14                    Transferred Property Under 11 U.S.C. §§ 548(a)(1)(B) and 550)

15    66.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through
16  65, inclusive, as though fully set forth herein.

17    67.    The Trustee is informed, believes, and alleges that at the time of the Transfers,
18  Debtor was engaged in or was about to engage in a business or a transaction for which Debtor's
19  remaining assets were unreasonably small in relation to the business or transaction.

20    68.    The Trustee is informed, believes, and alleges that at the time of the Transfers,
21  Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts
22  beyond his ability to pay as they became due.

23    69.    The Trustee is informed, believes, and alleges that the Transfers were made to and
24  for the benefit of the Debtor and Defendants.

25    70.    The Trustee is informed, believes, and alleges that Debtor did not receive reasonably
26  equivalent value in exchange for the Transfers.

27    71.    The Trustee is informed, believes, and alleges that Debtor did not make the
28  Transfers in good faith.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

72.    The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers for reasonably equivalent value.

73.    The Trustee is informed, believes, and alleges that the Defendants did not take the Transfers in good faith.

74.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and Plaintiff is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

## SEVENTH CLAIM FOR RELIEF

(To Preserve Transfers for the Benefit of the Estate

Pursuant to 11 U.S.C. § 551)

75.    Trustee incorporates each and every allegation contained in paragraphs 1 through 74, inclusive, as though fully set forth herein.

76.    Pursuant to 11 U.S.C. § 551, the Transfers are preserved for the benefit of the Estate as the Transfers are avoidable under 11 U.S.C. §§ 544 and 550 as set forth above.

## EIGHTH CLAIM FOR RELIEF

**(For Injunction Against Defendants Pursuant to 11 U.S.C. §105)**

77.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 76, inclusive, as though fully set forth herein.

78.    Plaintiff is informed, believes, and alleges that the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property, and the proceeds therein, are property of the Estate.

79.    Plaintiff is informed, believes, and alleges that Plaintiff has standing to administer the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property and the proceeds therein, and that the Debtor's Probate Estate does not have any legal or equitable right to control those properties.

80.    In order to prevent further dissipation of assets of the Estate, the Plaintiff seeks an injunction, including a temporary restraining order, preventing the transfer of the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property, or

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  the proceeds therein, and ordering them to be turned over to the Trustee for administration, and any

2  other legal or equitable relief that the Court deems necessary or appropriate to preserve the

3  Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage

4  Property for the benefit of the Estate's creditors.

5      **WHEREFORE**, Plaintiff requests that this Court enter a judgment in favor of Plaintiff and

6      against the Defendants as follows:

7  ### On the First Claim for Relief

8      1.      Declaring that the Washington Property, the 1322 N. Logan Property, the 1326 N.

9  Logan Property and the Heritage Property and the proceeds therein, are property of the Estate

10  pursuant to 11 U.S.C. § 541;

11  ### On the Second Claim for Relief

12      2.      Compelling Defendants to turn over and deliver to the Trustee the Washington

13  Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property, and

14  the proceeds therein.

15  ### On the Third Claim for Relief

16      3.      Avoiding the Transfers and declaring that the Transfers be annulled and rendered

17  void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the

18  Estate.

19      4.      Awarding the Trustee a money judgment against the Defendants in the amount of

20  the Transfers.

21  ### On the Fourth Claim for Relief

22      5.      Avoiding the Transfers and declaring that the Transfers be annulled and rendered

23  void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the

24  Estate.

25      6.      Awarding the Trustee a money judgment against the Defendants in the amount of

26  the Transfers.

27

28

Welland Golden Goodrich LLP

### On the Fifth Claim for Relief

7.    Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

8.    Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Sixth Claim for Relief

9.    Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

10.    Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Seventh Claim for Relief

11.    For preservation of the Transfers for the benefit of the Estate.

### On the Eighth Claim for Relief

12.    Granting an injunction, including a temporary restraining order, preventing the transfer of the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property, the proceeds therein, and ordering it to be turned over to the Trustee for administration, and any other legal or equitable relief that the Court deems necessary or appropriate to preserve the Washington Property, the 1322 N. Logan Property, the 1326 N. Logan Property and the Heritage Property for the benefit of the Estate's creditors.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1

### On All Claims for Relief

2    13.    For such other and further relief as this Court may deem just and proper

3

4                                Respectfully submitted,

5

6    Dated:  October 12, 2018                WEILAND GOLDEN GOODRICH LLP

7

8                                By:  /s/ Faye C. Rasch
                                      FAYE C. RASCH
9                                      Attorneys for Chapter 7 Trustee,

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# 2010 STEELMAN INTER VIVOS TRUST

### Table of Contents

ARTICLE ONE
CREATION OF TRUST
Declaration . . . . . . . . . . . . . . . . .
Names of Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Identification of Living Children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
No Deceased Children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Definitions of Child, Children, and Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE TWO
TRUST ESTATE
Definition of Trust Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Character of Trust Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Nonprobate Transfers of Community Property . . . . . . . . . . . . . . . . . . . . . . . . . 2
Additions to Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE THREE
RIGHTS AND POWERS OF SETTLORS
Power of Revocation While Both Settlors Are Living . . . . . . . . . . . . . . . . . . . . . 3
Power of Revocation and Amendment After Death of Deceased Settlor . . . . . . . . . . . 3
Method of Revocation or Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Delivery of Property After Revocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Trustee's Retention of Assets on Revocation . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Exercise of Rights and Powers of Settlors By Others . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE FOUR
DISTRIBUTIONS DURING SETTLORS' JOINT LIVES
Payment of Income During Settlors' Joint Lives . . . . . . . . . . . . . . . . . . . . . . . . . 5
Distributions of Principal During Settlors' Joint Lives . . . . . . . . . . . . . . . . . . . . . 6
Distributions of Principal at Request of Settlors . . . . . . . . . . . . . . . . . . . . . . . . . 6
Settlors' Obligation for Community Property Distributed . . . . . . . . . . . . . . . . . . . 7
Requests in Behalf of a Settlor Unable to Do So Personally . . . . . . . . . . . . . . . . . 7
Trustee's Power to Make Gifts at Direction of Settlors . . . . . . . . . . . . . . . . . . . . . 7

ARTICLE FIVE
DIVISION INTO SHARES AND INITIAL DISTRIBUTIONS
AFTER DECEASED SETTLOR'S DEATH
Payment of Death Taxes, Debts, and Expenses on Statement From Personal
    Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Trustee's Power to Defer Division or Distribution . . . . . . . . . . . . . . . . . . . . . . . . 9

EXHIBIT 1    PAGE 14

Division of Trust Estate After Death of Deceased Settlor . . . . . . . . . . . . . . . . . . . . . . . . 10
Allocation and Valuation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Intention That Marital Deduction Share Qualify for Marital Deduction . . . . . . . . . . . . 12
Disclaimer of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## ARTICLE SIX
### DISPOSITIVE PROVISIONS OF TRUSTS CREATED
### AFTER DECEASED SETTLOR'S DEATH

Survivor's Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Power of Appointment Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Disposition of Bypass Trust Until Death of Surviving Settlor . . . . . . . . . . . . . . . . . . . 16
Disposition of Bypass Trust on Death of Surviving Settlor: Special Power of
    Appointment; Default Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Disclaimer Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Trust for SHAUNAH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Trust for JODI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Separate Share Trust for Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Spendthrift Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Administration of Generation-Skipping Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## ARTICLE SEVEN
### TRUSTEE

Settlors' Power to Designate Successor Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Remaining Settlor to Act as Sole Trustee on Death or Incapacity of Other Settlor . . . . . 26
Power of Surviving Joint Settlor to Designate Successor Trustees or Cotrustees . . . . . . 27
Successor Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Definition of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Removal and Replacement of Trustee by Settlors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Waiver of Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Compensation of Individual Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Procedure for Resignation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
General Powers of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Power to Retain Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Trustee's Power to Invest Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Power Over Unproductive Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Power to Operate Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Power to Operate Farm or Ranch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Powers Regarding Subchapter S Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
Retention of Family Residence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Power to Combine Trust Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Early Termination of Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Division or Distribution in Cash or Kind . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Payments to Legally Incapacitated Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Trustee's Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Written Notice to Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

EXHIBIT 1    PAGE 15

 

Duty to Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Time Period For Objecting to Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Mandated Disclosures Upon Incapacity of the Surviving Settlor . . . . . . . . . . . . . . . 39
Cotrustee May Delegate Acts to Other Cotrustee . . . . . . . . . . . . . . . . . . . . . . . . . 40

ARTICLE EIGHT
  CONCLUDING PROVISIONS
  Perpetuities Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
  Simultaneous Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
  No-Contest Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
  Definition of Deceased Settlor and Surviving Settlor . . . . . . . . . . . . . . . . . . . . . 42
  Definitions of Death Taxes, Debts, and Expenses . . . . . . . . . . . . . . . . . . . . . . . . 42
  Intentional Omission of Children Born or Adopted After Execution of Trust . . . . . . . . 43
  Definition of Incapacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
  Definition of Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
  Number and Gender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
  Captions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
  Severability Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
  California Law to Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
  Distribution to Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
  Gifts to Heirs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

ARTICLE NINE
  SIGNATURE AND EXECUTION
  Execution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

EXHIBIT 1    PAGE 16

 

I

## 2010 STEELMAN INTER VIVOS TRUST

### ARTICLE ONE

### CREATION OF TRUST

1.1. <u>Declaration</u>. DENNY ROY STEELMAN and CHRISTINE LENORE STEELMAN, husband and wife, of Orange County, California, who are herein referred to as "the settlors" or "the trustees," depending on the context, hereby declare that they hold certain property (the "trust estate") in trust, to be held, administered, and distributed according to the terms of this instrument.

1.2. <u>Names of Trusts</u>. The trusts created by this instrument shall be known collectively as the 2010 STEELMAN INTER VIVOS TRUST, and each separate trust created under this instrument shall be referred to by adding the name or designation of that separate trust as it appears in the appropriate section of this instrument.

1.3. <u>Effective Date</u>. This declaration shall be effective immediately on execution by all the parties.

1.4. <u>Identification of Living Children</u>. The settlors have two living children, as follows:

| Name | Date of Birth |
|------|---------------|
| SHAUNAH LYNN STEELMAN | 1/16/1966 |
| JODI DENISE STEELMAN | 10/6/1970 |

1.5. <u>No Deceased Children</u>. The settlors have no deceased children.

1.6. <u>Definitions of Child, Children, and Issue</u>. As used in this instrument, the terms "child" and "children" refer to natural children and to children who have been legally adopted

EXHIBIT 1    PAGE 17

 

2

during minority by the parent or parents from or through whom their right to inherit or to take is determined or derived, and the term "issue" refers to all lineal descendents of all generations, with the relationship of parent and child at each generation being determined by the definitions of "child" and "children" set forth in this instrument.

## ARTICLE TWO

### TRUST ESTATE

2.1. <u>Definition of Trust Estate</u>. All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in any schedules of property (which are attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

2.2. <u>Character of Trust Assets</u>. All community property of the settlors transferred to this trust, and the proceeds of all such property, shall continue to be community property under the laws of California, subject to the provisions of this instrument. All separate and quasi-community property shall remain the separate or quasi-community property, respectively, of the contributing settlor.

2.3. <u>Nonprobate Transfers of Community Property</u>. The consent of the settlors to the transfer of any community property assets subject to this trust shall be governed solely by the terms of this trust instrument. California Probate Code Sections 5010 through 5032 (or any

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 18



3

successor sections), dealing with nonprobate transfers of community property, shall be inapplicable to any trust created by this instrument.

2.4. <u>Additions to Trust</u>. From time to time, the trustee may accept additions to this trust from any source. All such additions shall become part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate on written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

## ARTICLE THREE

## RIGHTS AND POWERS OF SETTLORS

3.1. <u>Power of Revocation While Both Settlors Are Living</u>. During the joint lifetimes of the settlors, any trust created by this instrument may be revoked or terminated, in whole or in part, by either settlor as to any separate and quasi-community property of that settlor and any community property of the settlors. Any trust created by this instrument may be modified or amended by either settlor acting alone as to any separate and quasi-community property of that settlor, and by both settlors acting jointly as to any community property of the settlors.

3.2. <u>Power of Revocation and Amendment After Death of Deceased Settlor</u>. After the

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 19



4

death of the deceased settlor, the surviving settlor may at any time amend, revoke, or terminate, in whole or in part, the Survivor's Trust and the Power of Appointment Trust. All other trusts shall become irrevocable and shall not be subject to amendment after the death of the deceased settlor.

3.3.  Method of Revocation or Amendment.  Any amendment, revocation, or termination of any trust created by this instrument shall be made by written instrument signed by both settlors or by the settlor making the revocation, amendment, or termination, and delivered to the trustee. If the instrument making the revocation, amendment, or termination is signed by only one settlor and the other settlor is living at that time, a copy of the instrument making the amendment, revocation, or termination shall also be delivered to the other settlor. An exercise of the power of amendment substantially affecting the duties, rights, and liabilities of the trustee shall be effective only if agreed to by the trustee in writing. The written instrument for revocation or termination must specify that a revocation or termination of trust is intended and specify the property that is affected; a change in title or possession is not sufficient for revocation or termination.

3.4.  Delivery of Property After Revocation.  After any revocation or termination with respect to community property, the trustee shall promptly deliver the designated property to the settlors. Unless otherwise provided in the revocation or this trust instrument, any community property so returned shall continue to be the community property of the settlors. After any revocation or termination with respect to separate or quasi-community property, the trustee shall promptly deliver the designated property to the contributing settlor.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 20

5

3.5. <u>Trustee's Retention of Assets on Revocation</u>. In the event of any revocation of all or part of the trust, the trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities the trustee has lawfully incurred in administering the trust and any fees that have been earned by the trustee, until such time as those liabilities have been discharged and fees paid, unless the settlors indemnify the trustee against loss or expense.

3.6. <u>Exercise of Rights and Powers of Settlors By Others</u>. Any right or power that either settlor could exercise personally under the terms of this instrument, including any power to amend, revoke, or terminate any trust created by this instrument, may be exercised for and in behalf of that settlor by any attorney in fact who, at the time of the exercise, is duly appointed and acting for that settlor under a valid and enforceable durable power of attorney executed by that settlor under the Uniform Durable Power of Attorney Act, or any successor statute, or, if there is no such attorney in fact, by a duly appointed and acting conservator of that settlor, after petition to the court in accordance with California Probate Code Section 2580, or any successor statute.

## ARTICLE FOUR

## DISTRIBUTIONS DURING SETTLORS' JOINT LIVES

4.1. <u>Payment of Income During Settlors' Joint Lives</u>. So long as both settlors are living, the trustee shall pay the net income of the trust as specified in this section.

(a) <u>Community Property</u>. The trustee shall pay to or apply for the benefit of the settlors, or either of them, all of the net income from the trust community property, in monthly or other convenient installments (but not less often than annually) as the settlors, or either of them, and the trustee may agree on from time

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 21



6

to time.

(b) <u>Separate and Quasi-Community Property</u>. The trustee shall pay to or apply for the benefit of a settlor whose separate property or quasi-community property comprises part of the trust estate all of the net income from that property, in monthly or other convenient installments (but not less often than annually) as that settlor and the trustee may agree on from time to time.

4.2. <u>Distributions of Principal During Settlors' Joint Lives</u>. So long as both settlors are living, the trustee shall distribute principal of the trust, at any time or times, as specified in this section.

(a) <u>Community Property</u>. The trustee shall distribute to or apply for the benefit of the settlors, or either of them, as much of the principal of the community property of the trust as the trustee, in the trustee's discretion, deems necessary for the comfort, welfare, and happiness of the settlors, or either of them.

(b) <u>Separate and Quasi-Community Property</u>. The trustee shall distribute to or apply for the benefit of either settlor as much of the principal of the separate and quasi-community property of that settlor as the trustee, in the trustee's discretion, deems proper for the comfort, welfare, and happiness of that settlor.

(c) <u>Consideration of Other Resources When Distributing Principal</u>. In exercising discretion under subsections (a) and (b), the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available for use by the settlor or settlors, as the case may be, for the stated purposes and that are then known to the trustee. All decisions of the trustee regarding such payments, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

4.3. <u>Distributions of Principal at Request of Settlors</u>. So long as both settlors are living, the settlors shall have the right to withdraw principal of the trust, at any time or times, as specified in this section.

(a) <u>Community Property</u>. The trustee shall distribute to the settlors, or either of them, such amounts from the principal of the community property of the trust, up to the whole thereof, as the settlors, or either of them, may request of the trustee in writing.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1     PAGE 22

 

7

(b) <u>Separate and Quasi-Community Property</u>. The trustee shall distribute to a settlor whose separate or quasi-community property comprises part of the trust estate as much of the principal of that property, up to the whole thereof, as that settlor may request of the trustee in writing.

4.4. <u>Settlors' Obligation for Community Property Distributed</u>. Any payment of income or principal from the trust community property to or for the benefit of the settlors, or either of them, shall remain the community property of the settlors. A settlor who receives any such payment shall have the same obligations respecting that property that he or she would have with respect to all community property generally.

4.5. <u>Requests in Behalf of a Settlor Unable to Do So Personally</u>. If, at any time, either settlor is unable personally to make a request of the trustee to withdraw principal of the trust, that settlor's right to make the request may be exercised for or in behalf of that settlor by an attorney in fact who, at the time of the exercise, is duly appointed and acting for that settlor under a valid and enforceable durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act, or any successor statute. If there is no such attorney in fact, then the trustee shall have the discretion to make any principal distribution to or for the benefit of that settlor that the settlor could have requested personally if he or she were able to do so. In making any principal distribution under this section (whether pursuant to a request by an attorney in fact or not), the trustee shall pay as much of the principal as the trustee, in the trustee's discretion, deems necessary for that settlor's health, education, support, and maintenance. The trustee shall have discretion to determine when a settlor is unable personally to request principal payments from the trustee for purposes of this section.

4.6. <u>Trustee's Power to Make Gifts at Direction of Settlors</u>. So long as both settlors are

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 23

 

8

living, the trustee shall have the power to make gifts, as specified in this section:

(a) <u>Community Property</u>. The trustee shall distribute such sums of community property trust principal to such person or persons who are the natural objects of the settlors' bounty, as the settlors, acting jointly, may direct in writing.

(b) <u>Separate and Quasi-Community Property</u>. The trustee shall distribute such sums of trust principal that is the separate property or the quasi-community property of a settlor to such person or persons who are the natural objects of that settlor's bounty, as that settlor may direct in writing.

(c) <u>Incapacity of a Settlor</u>. In the event that a settlor is unable to direct the trustee in writing under this section due to incapacity, such direction may be made on the settlor's behalf by a duly authorized attorney in fact acting under a valid durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act (or successor statute); provided, however, that the amount of such gifts pursuant to the direction of an attorney in fact to any one person in any one year shall not exceed the amounts excluded from gift tax under Sections 2503(b) and (e) of the Internal Revenue Code (or successor statute).

## ARTICLE FIVE

## DIVISION INTO SHARES AND INITIAL DISTRIBUTIONS

## AFTER DECEASED SETTLOR'S DEATH

5.1. <u>Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative</u>. After the deceased settlor's death, on receipt by the trustee of a written statement from the personal representative of the deceased settlor's estate requesting that the trustee pay death taxes, debts, and expenses (as defined in Article Eight), with respect to any property in the deceased settlor's estate, the trustee shall pay, either directly or to the personal representative, any amounts requested by the personal representative for those purposes, in the manner specified below. The trustee may rely on the personal representative's statement and shall not be liable for

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 24

9

any act or omission by the personal representative in protesting or failing to protest the legality, propriety, or amount of the death taxes, debts, or expenses. If there is no personal representative, the trustee shall make the payments directly. Payments of debts and expenses shall be made by the trustee from the trust estate. Payment of any debts allocable against the separate property of the deceased settlor shall be charged against the Nonmarital Share (as defined below in this article). Debts allocable against community property shall be allocated to the Survivor's Share and the Nonmarital Share in accordance with California law in effect at the date of the deceased settlor's death, so long as charges against the Survivor's Share do not exceed the value of community property allocable to that share. All death taxes payable by reason of the death of the deceased settlor shall also be paid by the trustee from the trust estate. Payments of death taxes and expenses shall be charged to the Nonmarital Share, except for any death taxes that are attributable to a disclaimer of property under this instrument by the surviving settlor, which shall be paid from the Disclaimer Trust. The trustee shall not pay death taxes, debts, and expenses or other obligations of the deceased settlor or the deceased settlor's estate from proceeds of insurance policies on the deceased settlor's life if making those payments would be the sole cause of the proceeds being includable in the deceased settlor's gross estate for federal estate tax purposes.

5.2. Trustee's Power to Defer Division or Distribution. Whenever the trustee is directed to divide any part of the trust estate or distribute trust assets on the death of either settlor, the trustee may, in the trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value, divide, and distribute

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 25



10

the assets of the trust. During this time of deferral, the trustee may manage the trust assets through a single administrative trust. The ability of the trustee to delay division or distribution shall not affect the vesting of interests, which shall be as of the date of death.

5.3. <u>Division of Trust Estate After Death of Deceased Settlor</u>. On the death of the deceased settlor, the trustee shall divide the trust estate, including any additions made to it by reason of the deceased settlor's death, such as from the deceased settlor's estate or policies of life insurance on his or her life, into three shares, hereafter referred to as the Survivor's Share, the Marital Deduction Share, and the Nonmarital Share.

(a)  The Survivor's Share shall consist of the portion of the trust estate consisting of the surviving settlor's one half (1/2) interest in the settlors' community property, the surviving settlor's one half (1/2) interest in the deceased settlor's quasi-community property, and all of the surviving settlor's separate property and quasi-community property.

(b)  The Survivor's Share shall be held, administered, and distributed by the trustee according to the terms of the Survivor's Trust as set forth in Article Six.

(c)  The Marital Deduction Share shall consist of assets (excluding assets included in the Survivor's Share) having a value equal to the minimum amount necessary to eliminate (or reduce to the maximum extent possible) any federal estate tax at the death of the deceased settlor, taking into account the following:

(1)  The net value of all other property that passes or has passed to the surviving settlor under this trust instrument, the will of the deceased settlor, or otherwise and that qualifies for the federal estate tax marital deduction. For purposes of this subsection, any qualified disclaimer made by the surviving settlor shall be disregarded, and any property that will qualify as qualified terminable interest property under Internal Revenue Code Section 2056(b)(7) if the requisite election is made shall be considered to be qualified terminable interest property, regardless of whether the election is made;

(2)  All federal estate tax deductions and exclusions actually allowed, other than the marital deduction;

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 26

 

11

(3) The applicable credit amount available to the estate of the deceased settlor;

(4) The credit for state death taxes, if any, available to the estate of the deceased settlor, to the extent that the use of that credit does not result in or increase any death tax payable to any state; and

(5) Any other allowable credits available to the estate of the deceased settlor (except the credit for tax on prior transfers from a "transferor," as defined in Internal Revenue Code Section 2013, who dies within two years after the date of death of the deceased settlor), but only to the extent that those credits do not disqualify this gift from receiving the marital deduction.

(d) The Marital Deduction Share shall be held, administered, and distributed according to the terms of the Power of Appointment Trust as set forth in Article Six.

(e) The Nonmarital Share shall consist of all assets not allocated to the Survivor's Share or the Marital Deduction Share under the formula specified in this section.

(f) The Nonmarital Share shall be held, administered, and distributed according to the terms of the Bypass Trust as set forth in Article Six.

5.4. <u>Allocation and Valuation of Assets</u>. In allocating assets between the Marital Deduction Share and the Nonmarital Share, the trustee shall allocate the trust assets in cash or in kind, or partly in each, on a pro rata or non pro rata basis, and in undivided interests or not; subject, however, to the following:

(a) <u>Qualification for Marital Deduction</u>. Only assets that qualify for the marital deduction shall be allocated to the Marital Deduction Share.

(b) <u>Valuations of Allocations in Kind</u>. Assets allocated in kind shall be deemed to satisfy the marital deduction amount on the basis of their values as finally determined for federal estate tax purposes; provided, however, that the trustee shall act impartially, consistent with equitable principles requiring impartiality among beneficiaries, in allocating assets in satisfaction of the marital deduction share, so that any distribution of assets in satisfaction of the marital deduction share shall be made of assets, including cash, fairly representative of appreciation

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 27

 

12

or depreciation in the value of all property thus available for distribution.

(c) <u>Foreign Death Tax Credit</u>. The trustee shall not allocate assets that qualify for the foreign death tax credit to the Marital Deduction Share unless all other assets or interests available for allocation have been so allocated.

(d) <u>Insurance Policies</u>. Any incidents of ownership to a policy of insurance on the life of a person other than the deceased settlor shall be allocated to the Nonmarital Share.

(e) <u>Section 303 Stock</u>. The trustee is requested, but not required, to allocate to the Nonmarital Share the maximum number of shares of stock that qualify and will be used for redemption under Section 303 of the Internal Revenue Code; provided, however, that the trustee shall consider the likely effect of Section 303(b)(2) of the Internal Revenue Code on the estate of the surviving settlor.

5.5. <u>Intention That Marital Deduction Share Qualify for Marital Deduction</u>. The settlors intend that the Marital Deduction Share qualify for the federal estate tax marital deduction and this instrument shall be construed accordingly. No fiduciary shall take any action or exercise any power that may impair the federal estate tax marital deduction.

5.6. <u>Disclaimer of Property</u>. Any property or portion of property that is disclaimed by the surviving settlor shall be held, administered, or distributed according to the terms of the Disclaimer Trust, as set forth in Article Six.

ARTICLE SIX

DISPOSITIVE PROVISIONS OF TRUSTS CREATED

AFTER DECEASED SETTLOR'S DEATH

6.1. <u>Survivor's Trust</u>. The trustee shall hold, administer, and distribute the assets of the Survivor's Trust as follows:

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 28



13

(a) <u>Payment of Income</u>. The trustee shall pay to or apply for the benefit of the surviving settlor, so long as the surviving settlor lives, the entire net income of the trust, in monthly or other convenient installments agreed on by the surviving settlor and the trustee, but not less often than annually.

(b) <u>Discretionary Payment of Principal by Trustee</u>. At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the principal of the trust as the trustee deems proper for the surviving settlor's comfort, welfare, and happiness. In exercising discretion. the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available to the surviving settlor for use for these purposes and that are then known to the trustee. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

(c) <u>Right of Surviving Settlor to Withdraw Principal</u>. The trustee shall pay to the surviving settlor as much of the trust principal as the surviving settlor may from time to time demand in a signed writing delivered to the trustee.

(d) <u>General Power of Appointment</u>. On the death of the surviving settlor, all of the trust property (including the trust principal, all net income then held by the trustee, and all income then accrued but not collected by the trustee) shall be paid over and delivered to any entity or entities, person or persons, and on any trust, terms, and conditions, or to or in favor of the estate of the surviving settlor, as the surviving settlor may direct by will, provided only that no exercise of this power of appointment shall be effective unless it refers to this instrument and expressly indicates an intention to exercise this power of appointment. The trustee may rely on any instrument admitted to probate (or in any summary administration proceeding) as the last will of the surviving settlor in carrying out the terms of the power of appointment and shall not be liable for any good-faith act in reliance on that will, even if for any reason it is later determined to be invalid with respect to its purported exercise of this power of appointment. If no such probate or summary estate proceeding is otherwise required or instituted, the trustee may rely on any will that on its face appears to be the last validly executed will of the surviving settlor. If the trustee receives no notice of the existence of a will of the surviving settlor within six (6) months after the death of the surviving settlor, the trustee may distribute the trust assets and income as though this power of appointment had not been exercised and shall in that event be conclusively presumed to have acted in good faith, even if a valid will is thereafter discovered.

(e) <u>Payment of Death Taxes, Debts, and Expenses</u>. On the death of the surviving settlor and subject to any power of appointment exercised by him or her, the

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 29

14

trustee may, in the trustee's discretion, pay out of the income or principal or partly from the income and partly from the principal of the Survivor's Trust, the death taxes, debts, and expenses (as defined in Article Eight) arising on the death of the surviving settlor.

(f) Default Provision. In default of the power of appointment, or to the extent that an attempt to exercise the power was ineffectual, the entire remaining principal, all net income then held by the trustee, and all income then accrued but not collected by the trustee, after any payment of taxes, debts, and expenses pursuant to the applicable provisions of this instrument, shall be distributed in the manner specified in subsection (a) and following of Section 6.4, which set forth the default provisions of the special power of appointment in the Bypass Trust remainder. The special power of appointment provisions set forth in Section 6.4 of the Bypass Trust shall not apply to this trust. The property disposed of pursuant to this subsection shall not be considered to be part of the Bypass Trust unless this trust and the Bypass Trust have the same inclusion ratios for federal generation-skipping transfer tax purposes.

6.2. Power of Appointment Trust. The trustee shall hold, administer, and distribute the

assets of the Power of Appointment Trust as follows:

(a) Payment of Income. The trustee shall pay to or apply for the benefit of the surviving settlor, so long as the surviving settlor lives, the entire net income of the trust, in monthly or other convenient installments agreed on by the surviving settlor and the trustee, but not less often than annually. In determining the net income of the trust distributable to the surviving settlor, the trustee shall include all income that must be considered as income in order for the trust to qualify for the marital deduction under the federal estate tax law, and shall make no deductions from gross income that would prevent the trust from qualifying for that marital deduction, notwithstanding any contrary provisions of this instrument or any applicable provisions of state law. It is the intention of the settlors that the surviving settlor, as the beneficiary of a marital deduction trust, shall have substantially that degree of beneficial enjoyment of the trust during his or her lifetime that the principles of the law of trusts accord to a person who is unqualifiedly designated as the life beneficiary of a trust, and the trustee shall not exercise the trustee's discretion in a manner that is not in accord with this expressed intention. It is also the intention of the settlors that the trust produce for the surviving settlor during his or her lifetime the income, or that the surviving settlor shall have the benefit of the trust property, as is consistent with the value of the trust property and with its preservation.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 30

 

15

(b) <u>Discretionary Payment of Principal by Trustee</u>.  At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the principal of the trust as the trustee deems proper for the health, education, support, and maintenance of the surviving settlor. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are then known to the trustee and that are readily available to the surviving settlor. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

(c) <u>Right of Surviving Settlor to Withdraw Principal</u>.  The trustee shall pay to the surviving settlor those amounts of the principal of the trust, up to all of it, as the surviving settlor may from time to time request in writing.

(d) <u>General Power of Appointment</u>.  On the death of the surviving settlor, the trustee shall distribute all property subject to the trust (including the trust principal, all net income then held by the trustee, and all income then accrued but not collected by the trustee) to any entity or entities, person or persons, and on any trust, terms and conditions, or to or in favor of the estate of the surviving settlor, as the surviving settlor may direct by will, but only if that will expressly refers to and indicates an intention to exercise this power of appointment. The trustee may rely on any instrument admitted to probate (or in any summary administration proceeding) as the last will of the surviving settlor in carrying out the terms of the power of appointment and shall not be liable for any good-faith act in reliance on that will, even if for any reason it is later determined to be invalid with respect to its purported exercise of this power of appointment. If no such probate or summary estate proceeding is otherwise required or instituted, the trustee may rely on any will that on its face appears to be the last validly executed will of the surviving settlor. If the trustee receives no notice of the existence of a will of the surviving settlor within six (6) months after the death of the surviving settlor the trustee may distribute the trust assets and income as though this power of appointment had not been exercised and shall in that event be conclusively presumed to have acted in good faith, even if a valid will is thereafter discovered.

(e) <u>Payment of Taxes, Debts and Expenses</u>.  On the death of the surviving settlor and subject to any power of appointment exercised by him or her, the trustee, in the trustee's discretion, may pay out of the income or principal (or partly from each) of the Power of Appointment Trust the taxes, debts and expenses (as defined in Article Eight) arising on the death of the surviving settlor unless the trustee determines that other adequate provisions have been made for the payment of these taxes, debts and expenses.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 31

 

16

(f) <u>Payment of Federal Estate Taxes</u>. The trustee shall determine from the personal representative of the estate of the surviving settlor the amount of the federal estate tax allocable to the property of the trust by reason of Internal Revenue Code Section 2207 and shall set aside a portion of the trust principal for the purpose of paying that tax upon written demand of the personal representative.

(g) <u>Default Provision</u>. If any of the property subject to the power of appointment of the surviving settlor is not effectively appointed by him or her, that property, after payment of any taxes, debts, and expenses pursuant to the applicable provisions of this instrument, shall be distributed in the manner specified in subsection (a) and following of Section 6.4, which set forth the default provisions of the special power of appointment in the Bypass Trust remainder. The special power of appointment provisions set forth in Section 6.4 of the Bypass Trust shall not apply to this trust. The property disposed of pursuant to this subsection shall not be considered to be part of the Bypass Trust unless this trust and the Bypass Trust have the same inclusion ratios for federal generation-skipping transfer tax purposes.

6.3. <u>Disposition of Bypass Trust Until Death of Surviving Settlor</u>. During the lifetime of the surviving settlor, the trustee shall hold, administer, and distribute the assets of the Bypass Trust as follows:

(a) <u>Discretionary Payment of Income and Principal by Trustee</u>. At any time or times, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the net income and principal of the trust as the trustee deems proper to pay the reasonable expenses of the surviving settlor for his or her health, education, support, and maintenance. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are then known to the trustee and that are readily available to the surviving settlor for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(b) <u>Limitation on Discretionary Payment of Principal by Trustee</u>. Notwithstanding the provisions of the preceding subsection, the trustee shall not make discretionary payments of principal from the Bypass Trust to the surviving settlor unless the principal of the Power of Appointment Trust has been exhausted.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 32

 

17

(c) <u>Surviving Settlor's Right to Withdraw Principal.</u> In addition to any other payments and distributions that the surviving settlor may receive under this trust, the trustee shall distribute to the surviving settlor, during the surviving settlor's lifetime, those amounts from the principal of the trust that he or she may from time to time request of the trustee in writing, not exceeding in any calendar year the greater of $5,000 or 5 percent of the principal of the trust, determined as of the end of the calendar year. However, during any calendar year this right of withdrawal may be exercised only during the period November 15 through December 31. This right of withdrawal is not cumulative, so that if the surviving settlor does not withdraw the full amount that he or she is entitled to withdraw under this provision in any calendar year, the right to withdraw the amount not withdrawn shall lapse at the end of the calendar year. This power shall exist each year until the death of the surviving settlor.

6.4. <u>Disposition of Bypass Trust on Death of Surviving Settlor: Special Power of Appointment; Default Provisions.</u> On the death of the surviving settlor, the trustee shall

distribute all property subject to the Bypass Trust (including the trust principal, all net income

then held by the trustee, and all income then accrued but not collected by the trustee) to any one

or more of the group consisting of the then-living issue of the deceased Settlor, and on any trust,

terms, and conditions, as the surviving settlor may direct by will, but only if that will expressly

refers to and indicates an intention to exercise this power of appointment. The trustee may rely

on any instrument admitted to probate (or in any summary administration proceeding) as the last

will of the surviving settlor in carrying out the terms of the power of appointment and shall not

be liable for any good-faith act in reliance on that will, even if for any reason it is later

determined to be invalid with respect to its purported exercise of this power of appointment. If

no such probate or summary estate proceeding is otherwise required or instituted, the trustee may

rely on any will that on its face appears to be the last validly executed will of the surviving

settlor. If the trustee receives no notice of the existence of a will of the surviving settlor within

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 33

18

six (6) months after the death of the surviving settlor the trustee may distribute the trust assets

and income as though this power of appointment had not been exercised and shall in that event

be conclusively presumed to have acted in good faith, even if a valid will is thereafter discovered.

If any of the property subject to this special power of appointment of the surviving settlor is not

effectively appointed by him or her, the trustee shall hold, administer, and distribute that property

as follows:

(a)  If any of the settlors' issue survive the surviving settlor, the trustee shall divide
the trust property (including all income then accrued but uncollected and all
income then remaining in the hands of the trustee) into as many shares of equal
market value as are necessary to create one share for each of the settlors' then-
living children and one share for the issue then living of each of the settlors' then-
deceased children.

(b)  Each share created for a then-living child, specifically SHAUNAH LYNN
STEELMAN ("SHAUNAH") and JODI DENISE STEELMAN ("JODI"), shall be
held in Trust and administered and distributed by the trustee pursuant to the terms
set forth in the "Trust for SHAUNAH" (Section 6.6, *infra*) and the "Trust for
JODI" (per Section 6.7, *infra.*).

(c)  If any children of the settlors survive the surviving settlor, each share created
for a then-deceased child shall be distributed to the then-living issue of that then-
deceased child in the manner provided in California Probate Code Section 240, as
defined in the Article entitled "Concluding Provisions" of this instrument. If an
individual issue of that deceased child has reached the age of 65 years at the death
of the surviving settlor, the trustee shall distribute that issue's share outright to that
issue; if an individual issue of that deceased child has not reached the age of 65
years at the death of the surviving settlor, the trustee shall continue to hold,
administer, and distribute that issue's share in a separate trust for that issue
according to the terms set forth in Article Six applicable to the Separate Share
Trust for Issue.

(d)  If none of the settlors' children survive the surviving settlor, but any of the
settlors' issue are then living, the trustee shall distribute the trust property to those
issue, who are to take that property in the manner provided in California Probate
Code Section 240, as defined in the Article entitled "Concluding Provisions" of
this instrument. If an individual issue has reached the age of 65 years at the death

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 34

 

19

of the surviving settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue has not reached the age of 65 years at the death of the surviving settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(e) If none of the settlors' issue survive the surviving settlor, the trustee shall distribute the property outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

6.5. Disclaimer Trust. The trustee shall hold, administer, and distribute the assets of the

Disclaimer Trust as follows:

(a) Payment of Income. The trustee shall pay to or apply for the benefit of the surviving settlor the entire net income of the trust, in monthly or other convenient installments as agreed on by the surviving settlor and the trustee, but not less often than annually.

(b) Discretionary Payment of Principal by Trustee. At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the principal of the trust as the trustee deems proper to pay the reasonable expenses of the surviving settlor for his or her health, education, support, and maintenance. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the surviving settlor for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

(c) Distribution of Remainder. On the death of the surviving settlor, the trustee shall distribute all the property subject to the trust (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) in the manner specified in subsection (a) and following of Section 6.4. which set forth the default provisions of the special power of appointment in the Bypass Trust remainder. The special power of appointment provisions set forth in Section 6.4 of the Bypass Trust shall not apply to this trust. The property disposed of pursuant to this subsection shall not be considered to be part of the Bypass Trust unless this trust and the Bypass Trust have the same inclusion ratios for federal generation-skipping transfer tax purposes.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 35

 

20

**6.6.** <u>Trust for SHAUNAH</u>. The trustee shall hold, administer, and distribute the Trust for SHAUNAH as follows:

(a) <u>Discretionary Payments of Income and Principal</u>. At any time or times during the trust term, the trustee shall pay to or apply for the benefit of SHAUNAH as much of the net income and principal of the trust as the trustee deems proper for SHAUNAH's comfort, welfare, and happiness (but subject to subdivision (c) of California Probate Code Section 16081 if SHAUNAH is a trustee). In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to SHAUNAH for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(b) <u>Termination of Trust</u>. The trust shall terminate on SHAUNAH reaching the age of sixty-five (65) years or on her death, whichever occurs first. If the trust terminates on SHAUNAH reaching the age of 65 years, the trustee shall distribute the trust property (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to SHAUNAH outright. If the trust terminates on SHAUNAH's death, the trustee shall distribute the trust property outright to SHAUNAH's then-living issue in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument, or if SHAUNAH has no issue then living, to the settlors' then-living issue in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument. However, if an individual issue has not reached the age of 65 years at the death of the SHAUNAH, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(c) <u>Final Disposition</u>. If the trust property is not completely disposed of by the preceding provisions, the undisposed-of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 36

 

21

6.7. <u>Trust for JODI</u>. The trustee shall hold, administer, and distribute the Trust for JODI as follows:

(a) <u>Discretionary Payments of Income and Principal</u>. At any time or times during the trust term, the trustee shall pay to or apply for the benefit of JODI as much of the net income and principal of the trust as the trustee deems proper for JODI's comfort, welfare, and happiness (but subject to subdivision (c) of California Probate Code Section 16081 if JODI is a trustee). In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to JODI for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(b) <u>Termination of Trust</u>. The trust shall terminate on JODI reaching the age of sixty-five (65) years or on her death, whichever occurs first. If the trust terminates on JODI reaching the age of 65 years, the trustee shall distribute the trust property (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to JODI outright. If the trust terminates on JODI's death, the trustee shall distribute the trust property outright to JODI's then-living issue in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument, or if JODI has no issue then living, to the settlors' then-living issue in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument. However, if an individual issue has not reached the age of 65 years at the death of the JODI, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(c) <u>Final Disposition</u>. If the trust property is not completely disposed of by the preceding provisions, the undisposed-of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

6.8. <u>Separate Share Trust for Issue</u>. Each portion or share of the trust estate, or of the trust property of any other trust created by this trust instrument, that is allocated to a Separate Share Trust for Issue for the benefit of the beneficiary (as defined in subsection (a), below) when

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 37



22

that beneficiary is under the age of sixty-five (65) years shall be held, administered, and

distributed by the trustee as a separate trust, as follows:

(a) <u>Beneficiary</u>. The beneficiary of this trust is the individual issue of a deceased child of the settlors or the individual issue of the settlors, as the case may be, for whom this trust is created pursuant to the other provisions of this trust instrument.

(b) <u>Discretionary Payments</u>. At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the trust as the trustee deems proper for that beneficiary's comfort, welfare, and happiness (but subject to subdivision (c) of California Probate Code Section 16081 if the beneficiary is a trustee). In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the beneficiary for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(c) <u>Distribution on Termination</u>. The trust shall terminate on the beneficiary reaching 65 years of age or on the death of the beneficiary, whichever occurs first. If the trust terminates on the beneficiary reaching 65 years of age, the trustee shall distribute the trust property (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to the beneficiary outright. If the trust terminates on the death of the beneficiary, the trustee shall distribute the trust property to the then-living issue of the beneficiary in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument; or if the beneficiary has no issue then living, to the then-living issue of that deceased child who is the ancestor of the beneficiary, with those issue taking in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument: or if there is no such issue, to the settlors' then-living issue in the manner provided in California Probate Code Section 240, as defined in the Article entitled "Concluding Provisions" of this instrument. However, for any share of an issue for whose benefit there is a trust being administered under this instrument, such share shall be added to that trust and administered according to its terms.

(d) <u>Final Disposition</u>. If the trust property is not completely disposed of by the preceding provisions, the undisposed-of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 38



23

heirs of the surviving settlor.

6.9. <u>Spendthrift Clause</u>. The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust principal at such time or times as the trustee deems proper. Notwithstanding anything to the contrary in this section of this instrument, the surviving settlor shall be paid all income to which he or she is entitled under the Power of Appointment Trust.

6.10. <u>Administration of Generation-Skipping Trusts</u>. The provisions of this section apply to any trust under this instrument that is created on the deceased settlor's death and in which there is property that is or may become subject to the federal generation-skipping transfer tax:

> (a) <u>Allocation of Exemption to Part of Trust</u>. On written notification by the deceased settlor's executor that the executor intends to allocate any part of the generation-skipping transfer tax exemption that is available to the deceased settlor under Internal Revenue Code Section 2631(a) to some but not all of the property

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 39

 

24

in any trust to which this section applies, the trustee shall divide that trust into two separate trusts, to be designated as the Exempt Trust and the Nonexempt Trust. The Exempt Trust shall contain the fractional share of the property of that trust that represents the amount of the generation-skipping transfer tax exemption that the executor intends to allocate to the trust. The Exempt Trust shall have an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes. The Nonexempt Trust shall contain the balance of the property of that trust and shall have an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes. It is the settlors' intention that the executor then actually allocate the generation-skipping transfer tax exemption to the Exempt Trust and not to the Nonexempt Trust. The trustee shall not be liable for relying on the written instructions of the executor when acting in accordance with the provisions of this subsection.

(b) <u>Method of Allocation</u>. In allocating assets between the Exempt Trust and the Nonexempt Trust for purposes of this section, the trustee shall allocate the trust assets in cash or in kind, or partly in each, on a pro rata or non pro rata basis, and in undivided interests or not. Assets shall be valued at their values on the date or dates of distribution.

(c) <u>Allocation or Nonallocation of Exemption to Entire Trust</u>. Regardless of whether subsection (a) of this section applies, if the amount of the deceased settlor's generation-skipping transfer tax exemption actually allocated by the executor to a trust to which this section applies is equal to the value of the property of that trust so that the entire trust has an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes, the entire trust shall be referred to as the Exempt Trust. On the other hand, if no part of the deceased settlor's generation-skipping transfer tax exemption is actually allocated to the trust by the deceased settlor's executor so that the entire trust has an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes (or if the deceased settlor is not the transferor of that trust for generation-skipping transfer tax purposes), the entire trust shall be referred to as the Nonexempt Trust.

(d) <u>Trust Distributions</u>. The trustee may, but is not required to, administer the trusts under this instrument to which this section applies in such a manner that distributions made during the trust terms to "skip persons" (as defined in Internal Revenue Code Section 2613(a) or any equivalent successor statute) are made from Exempt Trusts, and distributions made during the trust terms to "non-skip persons" (as defined in Internal Revenue Code Section 2613(b) or any equivalent successor section) are made from Nonexempt Trusts.

(e) <u>Trustee's Power to Petition Court to Amend Nonexempt Trust</u>. If the trustee

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 40

 

25

determines that the burdens of generation-skipping transfer taxes, income taxes, and death taxes on a Nonexempt Trust, either settlor's estate, or the beneficiaries of that trust would be reduced, the trustee may petition the court to amend the trust to grant to one or more trust beneficiaries who are non-skip persons in a generation below the deceased settlor a general testamentary power of appointment over all or a specified portion of that Nonexempt Trust. Any power to amend the trust is within the discretion of the court, and the preceding sentence shall not be construed to give the trustee any power that the trustee does not already have under California trust law to petition the court under the appropriate circumstances, nor shall it be construed to limit the power of the trustee or any beneficiary under California trust law to petition the court under the appropriate circumstances.

(f) Purpose of Section. The purpose of this section is to allow the trustee to administer the trusts so as to decrease the amount of generation-skipping transfer taxes owed on transfers from the trusts. The trustee shall balance that consideration against any other tax and nontax considerations, and may disregard the generation-skipping transfer tax consequences to the extent that the trustee determines that doing so will allow the trustee to carry out the settlors' intentions in creating the trusts. All decisions of the trustee under this subsection are within the trustee's discretion and shall be final and incontestable by anyone.

(g) Amendment of Trust to Reflect Changes in Tax Law. If, in the judgment of the executor or the trustee, at any time after the execution of this trust instrument, any statute, regulation, court decision, or administrative ruling imposes different or additional requirements on the trust in connection with the generation-skipping transfer tax the executor or the trustee may petition the court to amend the terms of the trust to meet those requirements and achieve the purpose of this section.

(h) Allocation of Exemption of Surviving Settlor to Nonexempt Trust. If, on the death of the surviving settlor, (1) the surviving settlor is considered to be the transferor of any Nonexempt Trust established by this instrument for generation-skipping transfer tax purposes, and (2) the surviving settlor's executor allocates any part of the generation-skipping transfer tax exemption that is available to the surviving settlor under Internal Revenue Code section 2631(a) (or any equivalent successor section) to that Nonexempt Trust so that the entire trust then has an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes, that trust shall then be considered to be an Exempt Trust for purposes of this section.

(i) No Disqualification of Marital Deduction. In no event may the trustee exercise any power under this section in a manner that will impair the marital

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 41



26

deduction.

## ARTICLE SEVEN

### TRUSTEE

7.1.  <u>Settlors' Power to Designate Successor Trustees.</u>  At any time while both settlors are living, the settlors may designate either or both of the following:

      (a)  Any suitable person or entity to act as a successor cotrustee if either cotrustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as a cotrustee.

      (b)  One or more suitable persons or entities to act as a successor trustee, or as successor cotrustees, if both cotrustees die, become incapacitated, or are otherwise unable or unwilling to continue to act as cotrustees.

The powers specified in this section shall be exercisable only by both settlors acting jointly, unless one of the settlors is incapacitated or otherwise incapable of exercising this power, in which case the power may be exercised by the remaining settlor acting alone.  Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or cotrustee.  If more than one designation is made under this section, only the most recent designation shall be valid.

7.2.  <u>Remaining Settlor to Act as Sole Trustee on Death or Incapacity of Other Settlor.</u>  If, while both settlors are acting as cotrustees, either settlor dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as a cotrustee, and no successor cotrustee has been designated under any other provision of this trust instrument, the other settlor thereafter shall be sole trustee, with full power to continue the trust administration.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 42

27

**7.3.** <u>Power of Surviving Joint Settlor to Designate Successor Trustees or Cotrustees</u>.

Following the death of the deceased settlor, the surviving settlor may at any time designate one or

more suitable persons or entities to act as trustee or cotrustees in the event that the surviving

settlor dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as

trustee. This designation shall be made by a signed writing delivered to the person or entity

designated as successor. If more than one designation is made under this section, the most recent

designation shall prevail over all earlier designations. The power granted by this section shall not

apply to the Bypass Trust and the Disclaimer Trust.

**7.4.** <u>Successor Trustees</u>. If the office of trustee becomes vacant, by reason of death,

incapacity, or any other reason, and no successor trustee or cotrustees have been designated under

any other provision of this trust instrument, the following, in the order of priority indicated, shall

be trustee:

> First, KEVIN LIEBECK, the Settlors' Cousin by Marriage who resides at 7665
> Park Forest Drive, Huntington Beach, CA  92648; whose telephone number is
> 714.536.7639;

> Second, THOMAS TUNSTALL, the Settlors' Cousin by Marriage who resides at
> 7429 Pinnacle Cr., Huntington Beach, CA  92648; whose  phone number is
> 714.596.6460;

> Third, UNION BANK - TRUST DEPARTMENT, a Californai Corporate
> Professional Fiduciary.

If all those named above are unwilling or unable to serve as successor trustee, a new trustee or

cotrustees shall be appointed by the court.

**7.5.** <u>Definition of Trustee</u>. Reference in this instrument to "the trustee" shall be deemed

a reference to whoever is serving as trustee or cotrustees, and shall include alternate or successor

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 43



28

trustees or cotrustees, unless the context requires otherwise.

7.6. <u>Removal and Replacement of Trustee by Settlors</u>. While both settlors are alive, the settlors shall have the power, at any time and for any reason, with or without cause, to remove any trustee acting under this instrument, and notwithstanding any other provision of this instrument, designate another trustee to replace the removed trustee. Removal shall be effected by giving a written notice of removal to the trustee to be removed and to the designated successor. The removal shall become effective on the delivery to the settlors of a written acceptance of the trust by the successor trustee, and the settlors shall promptly notify the trustee being removed of the receipt of that acceptance.

7.7. <u>Waiver of Bond</u>. No bond or undertaking shall be required of any individual who serves as a trustee under this instrument.

7.8. <u>Compensation of Individual Trustees</u>. Each individual who is a trustee under this instrument shall be entitled to reasonable compensation for services rendered, payable without court order.

7.9. <u>Procedure for Resignation</u>. Any trustee may resign at any time, without giving a reason for the resignation, by giving written notice, at least thirty (30) days before the time the resignation is to take effect, to the settlors, if living, to any other trustee then acting, to any persons authorized to designate a successor trustee, to all trust beneficiaries known to the trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary) and to the successor trustee. A resignation shall be effective on written acceptance of the trust by the successor trustee.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 44

29

7.10. <u>General Powers of Trustee</u>. To carry out the purposes of the trusts created under this instrument, and subject to any limitations stated elsewhere in this instrument, the trustee shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(a) With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(b) Engage in any transactions with the personal representative of the estate of either settlor that are in the best interest of any trusts created in this instrument.

(c) Manage, control, improve, and maintain all real and personal trust property.

(d) Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(e) Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(f) Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property.

(g) With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1     PAGE 45

30

liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(h)  Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(i)  Deposit securities in a securities depository that is either licensed or exempt from licensing.

(j)  Borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(k)  Procure and carry, at the expense of the trust, insurance in such forms and in such amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(l)  Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(m)  Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(n)  Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(o)  At trust expense, prosecute or defend actions, claims, or proceedings of

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 46

31

whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

7.11.  Power to Retain Trust Property.  The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlors in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California Uniform Prudent Investor Act, as amended from time to time.

7.12.  Trustee's Power to Invest Property.  Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

7.13.  Power Over Unproductive Property.  The trustee shall have the power to retain or acquire unproductive or underproductive property; provided, however, that as to any assets of the Power of Appointment Trust, the surviving settlor shall have the right, by delivery of a written instrument to the trustee, to require the trustee to make unproductive property productive, within a reasonable time following receipt of the request.

7.14.  Power to Operate Business.  The trustee shall have the power to hold and operate any business or enterprise that is or becomes trust property, on such terms and for such a time as the trustee, in the trustee's discretion, deems advisable: to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell,

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 47

32

dissolve, liquidate, or terminate any such business. The trustee shall also have the power to
incorporate, reorganize, or otherwise change the form of a business or enterprise that is part of
the trust, through merger or consolidation of two or more enterprises or otherwise, and to
participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a
shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in,
or dissolution or liquidation of a business interest, in good faith, shall be at the risk of the trust,
and without liability on the part of the trustee for any resulting losses. The trustee shall also have
the power to contribute capital or loan money to the business or enterprise on such terms and
conditions as the trustee deems advisable.

7.15. Power to Operate Farm or Ranch. The trustee shall have the power to continue to
hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any
interest in farming or ranching property, whether organized as a sole proprietorship, general or
limited partnership, corporation, or otherwise, on such terms and for such time as the trustee, in
the trustee's discretion, deems advisable. Any such operation, sale, purchase, acquisition,
investment, or liquidation, in good faith, shall be at the risk of the trust and without liability on
the part of the trustee for any resulting losses. The trustee shall have all powers necessary or
appropriate to carry out the management of such farming and ranching property. The trustee
shall also have the power to incorporate any farming or ranching property, or any interest therein,
and to hold the stock as a trust asset; to borrow money for any purpose related to the operation, or
the acquisition or disposition, of any such farming or ranching interests; and to employ agents in
the management and operation of that property. The net profits and losses from the farming and

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 48

33

ranching operations conducted by the trust shall be computed in accordance with recognized

methods of accounting for comparable activities. The net profits from these activities shall

become trust income. The net losses from these activities shall not reduce other trust income for

the fiscal or calendar year during which they occur, but shall be carried into subsequent fiscal or

calendar years and reduce the net profits of the business for those years.

7.16. Powers Regarding Subchapter S Stock. If at any time the trust estate includes

shares of stock in any corporations that have elected to be governed by the provisions of

Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code (IRC Section 1361 et seq.,

or any successor sections), then notwithstanding any other provision of this instrument, the

trustee shall at all times manage those shares, and administer the trust estate, in a manner that

will maintain the S corporation status. To satisfy this obligation, but without limiting the

discretion of the trustee to take any action to protect the S corporation status, the trustee shall act

as follows:

(a) Allocation or Distribution to Permitted Shareholders. The trustee shall
allocate or distribute shares of S corporation stock only to those trusts or those
beneficiaries that are permitted to be shareholders of an S corporation.

(b) Qualified Subchapter S Trust Provisions. If shares of S corporation stock are
allocated to any trust created under this instrument and that trust does not
otherwise qualify as a permitted shareholder under Internal Revenue Code Section
1361, or any successor section, then notwithstanding any other provision of this
instrument, that trust (or any portion of that trust containing S corporation stock)
shall be administered so as to ensure that it is a Qualified Subchapter S Trust
(QSST), an Electing Small Business Trust (ESBT), or some other form of trust
that qualifies as a permitted shareholder under Internal Revenue Code Section
1361, or any successor section. The S corporation stock in each such trust shall be
held in separate share trusts (within the meaning of Internal Revenue Code
Section 663(c), or any successor section) for each beneficiary; and all other
property in each trust shall be held in a separate trust, which shall continue to be

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 49



34

administered in accordance with the terms of this instrument. With respect to the separate share trusts holding S corporation stock, the trustee shall make distributions of income and principal, and otherwise administer the trusts, to ensure that those trusts do not become ineligible shareholders of an S corporation. To the extent that the terms of this instrument are inconsistent with those separate share trusts qualifying as permitted shareholders of an S corporation, those terms shall be disregarded.

(c) <u>Other Trustee Administrative Powers</u>. The trustee shall have the power (1) to enter into agreements with other shareholders or with the corporation relating to transfers of S corporation stock or the management of the S corporation; and (2) to allocate amounts received, and the tax on undistributed income, between income and principal. During the administration of a trust holding S corporation stock, the trustee may allocate tax deductions and credits arising from ownership of S corporation stock between income and principal. In making those allocations, the trustee shall consider that the beneficiary is to have the enjoyment of the property at least equal to that ordinarily associated with an income interest.

(d) <u>Beneficiary Agreement</u>. The trustee shall not distribute any S corporation stock to any beneficiary unless, prior to that distribution, the beneficiary enters into a written agreement with the S corporation stating the following: (1) that the beneficiary will consent to any election to qualify the corporation as an S corporation; (2) that the beneficiary will not interfere with the S corporation maintaining its S corporation status; (3) that the beneficiary will not transfer the S corporation stock to any transferee who does not agree to execute a similar consent; (4) that the beneficiary will not transfer the stock in a manner that will cause a termination of S corporation status under the then applicable federal and state tax law and regulations; and (5) that the beneficiary will join in any attempt to obtain a waiver from the Internal Revenue Service of a terminating event on the grounds of inadvertence if S corporation status is inadvertently terminated and the S corporation or any shareholder desires that S corporation status should continue.

(e) <u>Certificate to Bear Legend</u>. If the trustee receives any shares of S corporation stock whose stock certificates bear a legend stating that the transfer, pledge, assignment, hypothecation, or other disposition of the stock is subject to the terms set forth in the preceding subsection, then the stock certificates shall also bear that legend when the trustee distributes those shares of S corporation stock to a beneficiary.

(f) <u>No Disqualification of Marital Deduction</u>. Any grant of power or discretion to the trustee under this section shall be void to the extent that that grant would cause the estate of the deceased settlor to lose all or part of the federal estate tax marital

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 50

 

35

deduction, and in the event of an irreconcilable conflict between qualification of a trust as a permitted shareholder of an S corporation and qualification of that trust for the federal estate tax marital deduction, all of the S corporation's stock otherwise passing to that trust shall be distributed outright to the surviving settlor.

7.17. <u>Retention of Family Residence</u>. The trustee shall retain, in any trust or trusts created by this trust instrument, any interest in real property used by the settlors as their principal residence at the time of the deceased settlor's death ("the family residence"), and shall deal with the family residence in accordance with the following terms and conditions:

(a) During his or her lifetime, the surviving settlor shall have the right to occupy the family residence (or any substitute residence or residential property purchased as provided in this section of the trust instrument) free of any rent.

(b) The trustee shall pay as much of the mortgage or trust deed payments, property taxes, assessments, insurance, maintenance, and ordinary repairs on the family residence (or any substitute residence or residential property purchased as provided in this section of the trust instrument) as corresponds to the trust's proportionate interest in the same. The trustee shall make those payments out of income or principal of the trust or trusts in accordance with the principles applicable to the charging of payments under California law, but in no event shall payment be made in a manner that disqualifies any part of the trust, that would otherwise so qualify, for the federal estate tax marital deduction.

(c) The surviving settlor, at his or her option, shall have the right to advise the trustee in writing that he or she no longer wishes to occupy the family residence and to direct the trustee to sell it, or any interest therein. In deciding on the terms and conditions relating to any sale, the trustee shall take into account all relevant factors, including, but not limited to, the intent of the settlors that no sale be made in a "forced sale" situation (other than at the direction of the surviving settlor) or at a time when, because of high mortgage rates or otherwise, the residential real estate market is depressed. In selling the family residence, the trustee may dispose of it on such terms as the trustee deems desirable, including an installment sale or any other desirable method of disposing of the family residence, provided that if the sale is for consideration other than cash, the purchaser's obligation shall be secured by a first deed of trust. In the event of a sale, the surviving settlor may direct the trustee in writing to apply the proceeds of the sale to the purchase of a substitute residence or residential property, of comparable or lesser value, to be selected by the surviving settlor, or to reinvest the proceeds in any manner that he

EXHIBIT 1     PAGE 51

 

36

or she may direct, provided that any such investments satisfy normal fiduciary standards of prudence and safety, and to use the income from reinvestment to pay the rental or lease payments on another residence or residential property, to be selected by the surviving settlor. Any net trust accounting income from any such investments, in excess of the trust share of the rental costs and any other expenses of trust administration, shall be added to the other trust income and distributed in accordance with the relevant provisions of the trust or trusts as set forth in Article Six of this trust instrument.

(d) On the death of the surviving settlor, the trust interest in either the family residence, any proceeds remaining from the sale of the family residence, or any substitute residence or residential property purchased by the trustee with any proceeds of sale of the family residence, shall be distributed in accordance with the applicable provisions of the trust or trusts in which the interest or interests are held, as set forth in Article Six of this trust instrument.

7.18. <u>Power to Combine Trust Assets</u>. Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

7.19. <u>Early Termination of Trusts</u>. The trustee shall have the power, in the trustee's discretion, to terminate any trust created under this trust instrument whenever the fair market value of the trust falls below forty thousand dollars ($40,000), or becomes so small in relation to the costs of administration as to make continuing administration uneconomical. Continuing administration shall be uneconomical if the trustee determines that, with reference to the trust fee schedules then in effect for corporate fiduciaries in the area in which the trust is being administered, the trust would be subject to the minimum trust administration fees of those fiduciaries, regardless of the value of the trust. On termination, the trustee shall distribute the principal and any accrued or undistributed net income to the income beneficiaries in proportion

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 52

37

to their shares of the income. If no fixed amount of income is payable to specific beneficiaries, the trustee shall distribute the principal and any accrued or undistributed net income in equal shares to those beneficiaries who would then be entitled to income payments from the trust.

7.20. <u>Division or Distribution in Cash or Kind</u>. In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this instrument shall be valued at its fair market value at the time of distribution. This section shall apply only to the extent that it does not conflict with the provisions in this instrument specifying allocation of assets involving the marital deduction share or with the provisions in this instrument specifying allocation of assets involving generation-skipping trusts.

7.21. <u>Payments to Legally Incapacitated Persons</u>. If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to the beneficiary's custodian under the California Uniform Transfers to Minors Act until the beneficiary reaches the age of twenty-five (25); to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 53

38

beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. If there is no custodian then-serving or nominated to serve by the settlor for a beneficiary, the personal representative or trustee, as the case may be, shall designate the custodian. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

7.22.  Trustee's Liability.  No trustee shall be liable to any interested party for acts or omissions of that trustee, except those resulting from that trustee's willful misconduct or gross negligence. This standard shall also apply regarding a trustee's liability for the acts or omissions of any cotrustee, predecessor trustee, or agent employed by the trustee.

7.23.  Written Notice to Trustee.  Until the trustee receives written notice of any death or other event on which the right to payments from any trust may depend, the trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been affected by that event.

7.24.  Duty to Account.  The trustee shall render accounts at least annually, at the termination of a trust, and on a change of trustees, to the persons and in the manner required by law. When a predecessor trustee has failed to render accounts as required under this provision, the successor trustee may, but need not, render accounts for such period with reasonable efforts without incurring any additional liability for acts of a predecessor trustee, other than as already provided under California law. This provision is intended to permit the successor trustee to render accounts for the predecessor without creating any additional duty to investigate or to

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 54





39

account. Nonetheless, if in the course of rendering accounts left undone by the predecessor trustee, the successor trustee obtains knowledge of a situation that may constitute a breach of trust committed by the predecessor trustee, the successor trustee shall deal with such knowledge in accordance with the successor trustee's fiduciary duties and powers.

7.25. <u>Time Period For Objecting to Account</u>. Upon receipt of an account by the trustee, a beneficiary has 180 days to make any objection to such account or to make any claim against the trustee for matters adequately disclosed in such account. The existence of this time period for objecting to an account shall be stated in the accounts rendered by the trustee in a separate paragraph on the face of the account in not less than 12-point boldface type as follows:

## <u>NOTICE TO BENEFICIARIES</u>

**YOU HAVE ONE HUNDRED EIGHTY (180) DAYS FROM YOUR RECEIPT OF THIS ACCOUNT OR REPORT TO MAKE AN OBJECTION OR OBJECTIONS TO ANY ITEM SET FORTH IN THIS ACCOUNT OR REPORT. ANY OBJECTION YOU MAKE MUST BE IN WRITING; IT MUST BE DELIVERED TO THE TRUSTEE WITHIN THE PERIOD STATED ABOVE; AND IT MUST STATE YOUR OBJECTION. YOUR FAILURE TO DELIVER A WRITTEN OBJECTION TO THE TRUSTEE WITHIN THE TIME PERIOD STATED ABOVE WILL PERMANENTLY PREVENT YOU FROM LATER ASSERTING THIS OBJECTION AGAINST THE TRUSTEE. IF YOU DO MAKE AN OBJECTION TO THE TRUSTEE, THE THREE YEAR PERIOD**

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 55

40

PROVIDED IN SECTION 16460 OF THE PROBATE CODE FOR
COMMENCEMENT OF LITIGATION WILL APPLY TO CLAIMS
BASED ON YOUR OBJECTION AND WILL BEGIN TO RUN ON THE
DATE THAT YOU RECEIVE THIS ACCOUNT OR REPORT.

7.26.  <u>Mandated Disclosures Upon Incapacity of the Surviving Settlor</u>.  If the surviving settlor becomes incapacitated, the trustee shall account to those persons who will become beneficiaries of income and/or principal distributions from the trust estate immediately following the death of the surviving settlor in addition to accounting to the surviving settlor, any person who may be acting as conservator of the estate of the surviving settlor and any person who may be acting as agent under the surviving settlor's durable power of attorney for property management.  If the surviving settlor becomes incapacitated, the trustee shall provide a copy of this instrument and any amendments hereto to those persons who will become beneficiaries of income and/or principal distributions from the trust estate immediately following the death of the surviving settlor.

7.27.  <u>Cotrustee May Delegate Acts to Other Cotrustee</u>.  Any cotrustee may, from time to time, delegate to the other cotrustee routine acts of trust administration and may establish bank or other accounts for the trust that will honor the signature of one or of either cotrustee.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1   PAGE 56





41

## ARTICLE EIGHT

### CONCLUDING PROVISIONS

8.1. <u>Perpetuities Savings Clause</u>. Notwithstanding any other provision of this instrument, every trust created by this instrument or by the exercise of any power of appointment created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of the settlors and their issue who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the surviving settlor, whichever occurs first. If a trust is terminated under this section, the trustee shall distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlors in creating the trust. The trustee's decision is to be final and incontestable by anyone.

8.2. <u>Simultaneous Death</u>. If the settlors die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, each settlor shall be deemed to have survived the other, and this instrument shall be construed accordingly. If any beneficiary and either or both settlors die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, the settlor or settlors shall be deemed to have

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 57



42

survived the beneficiary, and this instrument shall be construed accordingly.

8.3. <u>No-Contest Clause</u>. If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly does any of the following acts, then the right of that person to take any interest given to him or her by this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlors without issue.

Without probable cause challenges the validity of this instrument on any of the following grounds:

  (a) Forgery;
  (b) Lack of due execution;
  (c) Lack of capacity;
  (d) Menace, duress, fraud, or undue influence;
  (e) Revocation pursuant to the terms of this instrument or applicable law;
  (f) Disqualification of a beneficiary who is a "disqualified person" as described in California Probate Code Section 21350 or applicable successor statute.

8.4. <u>Definition of Deceased Settlor and Surviving Settlor</u>. In this instrument, the first settlor to die is referred to as the "deceased settlor" and the other settlor is referred to as the "surviving settlor."

8.5. <u>Definitions of Death Taxes, Debts, and Expenses</u>. As used in this instrument, the following definitions apply:

  (a) The term "death taxes" shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in the estate of a settlor or by reason of that settlor's death, including penalties and interest, but excluding the following: (i) any additional tax that may be assessed under Internal Revenue Code Section 2032A; and (ii) any federal or state tax imposed on any generation-skipping transfer, as that term is defined in the federal tax laws, unless that generation-skipping transfer tax is payable directly out of the assets of a trust created by this instrument.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 58



43

(b)  The term "debts and expenses" shall include the following: (i) all costs, expenses of litigation, counsel fees, or other charges that the trustee incurs in connection with the determination of the amount of the death taxes, interest, or penalties referred to in subsection (a) of this section; and (ii) legally enforceable debts, funeral expenses, expenses of last illness, and administration and property expenses.

8.6.  <u>Intentional Omission of Children Born or Adopted After Execution of Trust</u>.  Except as otherwise provided in this instrument, the settlors have intentionally failed to provide in this instrument for any children born to or adopted by either settlor after the execution of this instrument.

8.7.  <u>Definition of Incapacity</u>.

(a)  For purposes of this instrument, a person is deemed "incapacitated" or deemed to suffer from "incapacity" if any of the following circumstances apply:

(1)  The person is unable, in the trustee's judgment, to provide properly for that person's own needs for physical health, food, clothing, or shelter; to manage substantially that person's own financial resources; or to resist fraud or undue influence.

(2)  A medical doctor, a board-certified neuropsychologist, or a board-certified psychiatrist, not related by blood or marriage to any trustee or beneficiary, examines such person and declares under penalty of perjury that such person is either temporarily or permanently incapacitated, according to generally accepted medical definitions.

(3)  The person is operating under a legal disability, such as a duly established conservatorship.

(4)  The court makes a finding that the person is either temporarily or permanently incapacitated under the criteria set forth in Prob. Code Section 810 et seq.

(5)  If the person whose capacity is in question is a trustee or cotrustee, the judgment by unanimity of the following persons regarding the capacity of the trustee or cotrustee is another method by which that person may be deemed "incapacitated" or deemed to suffer from "incapacity" for the

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 59

44

purposes of this instrument: the current beneficiaries of the trust.

(b) In case of temporary incapacity of a sole trustee, the successor trustee designated under this instrument shall serve during the period of temporary incapacity as though he or she were the only trustee. In case of temporary incapacity of a cotrustee, the other cotrustee shall make any and all decisions during the period of temporary incapacity as though that cotrustee were the only trustee.

(c) Any trustee deemed to be temporarily incapacitated shall be deemed to be permanently incapacitated 90 days after the determination of temporary incapacity unless a determination of capacity is made within that 90-day period. If a determination of capacity is made, the trustee may resume serving as trustee. If there is a subsequent determination of incapacity, the trustee has another 90-day period to obtain a determination of capacity.

(d) Any successor trustee or cotrustee serving in place of a temporarily incapacitated trustee shall not be relieved of liability until that trustee's account has been settled or an account has been waived by a majority of all current beneficiaries of the trust.

(e) If any trustee or any beneficiary whose capacity is in question disputes the determination of incapacity under any of the standards listed above, such person may petition the court for a finding regarding that person's capacity. The court's finding shall be conclusive. If the court determines that the trustee or other person whose capacity is in question has capacity, the trust property shall bear all expenses associated with the examination or court proceeding. If the court sustains the determination of incapacity, the individual challenging the determination of incapacity shall bear all expenses of the examination or court proceeding.

(f) Each individual trustee agrees to cooperate in any examination reasonably necessary for the purpose of determining capacity, agrees to waive the doctor-patient privilege in respect to the results of such examination, and agrees to provide written authorization in compliance with the privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. Section 1320d) and the provisions of California Civil Code Section 56.10 for the disclosure and use of that trustee's health information and medical records to the extent that such disclosure and use are necessary to make a determination of the trustee's capacity. Refusal to submit to the examination, to provide the waiver, or to provide the written authorization when requested by the current beneficiaries of the trust shall be deemed a resignation by that trustee.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 60



45

8.8. <u>Definition of Education</u>.  As used in this instrument, the term "education" refers to the following:

> (a) Education at public or private elementary, junior high, middle, or high schools, including boarding schools;
>
> (b) Undergraduate, graduate, and postgraduate study in any field, whether or not of a professional character, in colleges, universities, or other institutions of higher learning;
>
> (c) Specialized formal or informal training in music, the stage, the handicrafts, or the arts, whether by private instruction or otherwise; and
>
> (d) Formal or informal vocational or technical training, whether through programs or institutions devoted solely to vocational or technical training, or otherwise.

8.9. <u>Number and Gender</u>.  As used in this instrument, references in the masculine gender shall be deemed to include the feminine and neuter genders, and vice versa, and references to the singular shall be deemed to include the plural, and vice versa, wherever the context so permits.

8.10. <u>Captions</u>.  The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

8.11. <u>Severability Clause</u>.  If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

8.12. <u>California Law to Apply</u>.  All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 61

46

beneficiary.

8.13. <u>Distribution to Issue</u>.  Whenever a division of property is specified to be made under this instrument among the issue of an individual in the manner set forth in California Probate Code Section 240, the distribution shall be made as described in this section.  The individual is referred to in this section as the Designated Ancestor.  The first division shall be made at the generation of issue with members who survive the Designated Ancestor that is nearest in degree to the Designated Ancestor.  The property shall be divided into as many equal shares as there are members of that generation who survive the Designated Ancestor plus deceased members of that generation who leave issue who survive the Designated Ancestor. Each member of that generation who survives the Designated Ancestor shall receive one such equal share.  The equal share of each deceased member of that generation who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased member's issue who survive the Designated Ancestor in the manner described in this section as if the deceased member were the Designated Ancestor as to that share.

8.14. <u>Gifts to Heirs</u>.  For any gift to "heirs" of either or both settlors that is made in this instrument, those heirs shall be determined as if the settlor or settlors had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor or settlors are deemed to have died.


2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1     PAGE 62

46

beneficiary.

8.13.  <u>Distribution to Issue</u>.  Whenever a division of property is specified to be made under this instrument among the issue of an individual in the manner set forth in California Probate Code Section 240, the distribution shall be made as described in this section.  The individual is referred to in this section as the Designated Ancestor.  The first division shall be made at the generation of issue with members who survive the Designated Ancestor that is nearest in degree to the Designated Ancestor.  The property shall be divided into as many equal shares as there are members of that generation who survive the Designated Ancestor plus deceased members of that generation who leave issue who survive the Designated Ancestor. Each member of that generation who survives the Designated Ancestor shall receive one such equal share.  The equal share of each deceased member of that generation who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased member's issue who survive the Designated Ancestor in the manner described in this section as if the deceased member were the Designated Ancestor as to that share.

8.14.  <u>Gifts to Heirs</u>.  For any gift to "heirs" of either or both settlors that is made in this instrument, those heirs shall be determined as if the settlor or settlors had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor or settlors are deemed to have died.

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 63



47

## ARTICLE NINE

### SIGNATURE AND EXECUTION

9.1. <u>Execution</u>.  We certify that we have read the foregoing declaration of trust and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and distributed.  As trustees of the trusts created by this declaration of trust, we approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions.  As settlors of the trusts created by this declaration of trust, we approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions.

Executed on August ___10___, 2010 at ___Newport Beach_____, California.

SETTLORS-TRUSTEES

_____
DENNY ROY STEELMAN

_____
CHRISTINE LENORE STEELMAN

Approved:

THE LAW OFFICE OF DUSTIN J. NICHOLS, A PC.

By:_____
DUSTIN I. NICHOLS, ESQ., President
Attorney for Settlors.

///

///

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 64

 

48

## ACKNOWLEDGMENT

State of California            )
                              ) ss
County of Orange              )

On _AUGUST 10, 2010_____ before me,

_Pamela M. ERISER_____, a notary public, personally appeared DENNY ROY

STEELMAN and CHRISTINE LENORE STEELMAN, who proved to me on the basis of

satisfactory evidence to be the persons whose names are subscribed to the within instrument and

acknowledged to me that they executed the same in their authorized capacities, and that by their

signatures on the instrument, the persons, or the entity upon behalf of which the persons acted,

executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Pamela M Eriser_____(SEAL)

PAMELA M. ERISER
COMM. # 1798113
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. May 12, 2012

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 65

49

## SCHEDULE "A"

THE 2010 STEELMAN INTER VIVOS TRUST

SETTLORS' COMMUNITY PROPERTY

(SEE ATTACHED LIST OF TRUST ASSETS)

By affixing our initials hereto, the Settlors', DENNY ROY STEELMAN and CHRISTINE LENORE

STEELMAN hereby declare our unequivocal intent that the assets attached to this Schedule "A" be

part of The 2010 STEELMAN INTER VIVOS TRUST DATED AUGUST _16_, 2010.

Dated: August ___)___, 2010.

_____
Husband

_____
Wife

2010 STEELMAN INTER VIVOS TRUST

EXHIBIT 1    PAGE 66



## Schedule "A"

1.  All silver, chinaware, books, pictures, paintings, works of art, household furniture and furnishings, jewelry, clothing collectibles, and other personal effects wherever located.

2.  1326 N. Logan St., Santa Ana, CA 92701; APN 398-182-21;

3.  1322 N. Logan St., Santa Ana, CA 92701; APN 398-182-17;

4.  1001 E. Washington Ave., Santa Ana, CA 92701; APN 398-183-14;

5.  351 Holmes Lane, Sugarloaf, CA 92386; APN 2350-515-07;

6.  1045 Heritage Trail, Big Bear, CA 92314; APN 0315-421-68

7.  26881 Windsor Dr., San Juan Capistrano, CA 92675; APN 650-481-12;

8.  1325 N. Logan St., Santa Ana, CA 92705; APN 398-183-20

EXHIBIT 1    PAGE 67

# EXHIBIT 2

RECORDING REQUESTED BY

LAW OFFICE OF DUSTIN I NICHOLS APC
WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:
DENNY R. STEELMAN, TRUSTEE
26881 WINDSOR DRIVE
SAN JUAN CAPISTRANO, CA 92675



Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

$32.00

\*SR00079254343\*

2015000560083 2:11 pm 10/28/15
62 411 D10 F13   2
0.00 0.00 20.00 0.00 3.00 0.00 0.00 0.00

APN:  398-183-14

Space above this line for Recorder's use

# TRUST TRANSFER DEED

**GRANT DEED** (EXCLUDED FROM REAPPRAISAL UNDER PROPOSITION 13, I.E., CALIF. CONST. ART 13A§1 ET.SEQ.)
THE UNDERSIGNED GRANTOR(S) DECLARE(S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
THERE IS NO CONSIDERATION FOR THIS TRANSFER.
DOCUMENTARY TRANSFER TAX IS $0/NO CONSIDERATION
☐ Computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale or transfer
☑ There is no Documentary transfer tax due.  (state reason and give Code § or Ordinance number) R&T  11930
☐ Unincorporated area:          ☒ city of SANTA ANA

**This is a Trust Transfer under §62 of the Revenue an Taxation Code and Grantor(s) has (have) checked
the applicable exclusion:**

☐   Transfer to a revocable trust;
☐   Transfer to a short term trust not exceeding 12 years with trustor holding the revision;
☑   Transfer to a trust where the trustor or the trustor's spouse is the sole beneficiary;
☐   Change of trustee holding title;
☐   Transfer from trust to trustor's spouse where prior transfer to trust was excluded from reappraisal and for
     the valuable consideration, receipt of which is acknowledge.
☐   Other:

**GRANTOR(S):   DENNY R. STEELMAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

hereby **GRANT(S) TO: DENNY R. STEELMAN, TRUSTEE OF THE BYPASS TRUST UNDER THE 2010
STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010,**

the following described real property in the City of SANTA ANA, County of ORANGE, State of California:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

Commonly known as: 1001 E. Washington Street, Santa Ana, CA

Dated: _10 - 1 —_____, 2015          _Denny R Steelman_

                              Grantor: DENNY R. STEELMAN

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA
COUNTY OF _ORANGE_      } ss:

On _OCTOBER 01_, 2015, before me, _HALINA F. OSINSKI_, a Notary Public, personally
                                  (here insert name and title of the officer)
appeared _DENNY R. STEELMAN_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _Halina F. Osinski_

HALINA F. OSINSKI
Commission # 1992248
Notary Public - California
Orange County
My Comm. Expires Oct 22, 2016

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT 2    PAGE 68

# EXHIBIT 3

RECORDING REQUESTED BY

LAW OFFICE OF DUSTIN I NICHOLS APC
WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:
DENNY R. STEELMAN, TRUSTEE
26881 WINDSOR DRIVE
SAN JUAN CAPISTRANO, CA 92675

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

*$R00080345833*

2015000638552 3:13 pm 12/17/15

90 422 G02 F13   3

0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

APN:  398-182-17

Space above this line for Recorder's use

# TRUST TRANSFER DEED

**GRANT DEED** (EXCLUDED FROM REAPPRAISAL UNDER PROPOSITION 13, I.E., CALIF. CONST. ART 13A§1 ET.SEQ.)
THE UNDERSIGNED GRANTOR(S) DECLARE(S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
THERE IS NO CONSIDERATION FOR THIS TRANSFER.
DOCUMENTARY TRANSFER TAX IS $0/NO CONSIDERATION
☐ Computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale or transfer
☒ There is no Documentary transfer tax due.  (state reason and give Code § or Ordinance number)R&T 11930
☐ Unincorporated area:        ☒ city of SANTA ANA

**This is a Trust Transfer under §62 of the Revenue an Taxation Code and Grantor(s) has (have) checked
the applicable exclusion:**

☐   Transfer to a revocable trust;
☐   Transfer to a short term trust not exceeding 12 years with trustor holding the revision;
☒   Transfer to a trust where the trustor or the trustor's spouse is the sole beneficiary;
☐   Change of trustee holding title;
☐   Transfer from trust to trustor's spouse where prior transfer to trust was excluded from reappraisal and for
     the valuable consideration, receipt of which is acknowledge.
☐   Other:
**GRANTOR(S):   DENNY R. STEELMAN, TRUSTEE OF THE STEELMAN FAMILY TRUST DATED MARCH 30,
1993,**

hereby **GRANT(S) TO: DENNY R. STEELMAN, TRUSTEE OF THE BYPASS TRUST UNDER THE 2010
STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010,**

the following described real property in the City of SANTA ANA, County of ORANGE, State of California:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**
Commonly known as: 1322 N. Logan, Santa Ana, CA

Dated:  _10 - 1 __ , 2015

**Grantor: DENNY R. STEELMAN, TRUSTEE**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF  ORANGE          } ss:

On  OCTOBER  01 , 2015, before me, HALINA F. OSINSKI , a Notary Public, personally
                                          (here insert name and title of the officer)
appeared  DENNY R. STEELMAN
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

HALINA F. OSINSKI
Commission # 1992248
Notary Public - California
Orange County
My Comm. Expires Oct 22, 2016

See next
page for
clear
acknowledgment

Signature

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT 3   PAGE 69

> A notary or other officer completing this certificate verifies only the identity
> of the individual who signed the document to which this certificate is attached,
> and not the truthfulness, accuracy, or validity of that document.

## ACKNOWLEDGMENT

State of California        )
                            ) ss
County of Orange       )

On _OCTOBER 1, 2015_, before me, _HALINA F. OSINSKI_ _____ Notary

Public, personally appeared _DENNY R. STEELMAN_ who proved to me on

the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or

the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the

foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature: _____

> HALINA F. OSINSKI
> Commission # 1992248
> Notary Public - California
> Orange County
> My Comm. Expires Oct 22, 2016

[Seal]

EXHIBIT 3    PAGE 70

EXHIBIT "A"

APN  398-182-17

LOT 5, BLOCK B, OF SMITH SUBDIVISION OF LOT 19 EAST HALF OF LOT 18,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
36, PAGE 75, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXHIBIT 3    PAGE 71

# EXHIBIT 4

*76*

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

35.00
* $ R 0 0 0 8 3 4 2 4 5 5 8 *
2016000192472 10:18 am 05/02/16
9 410 D10 F13    3
0.00 0.00 20.00 0.00 6.00 0.00 0.00 0.00

**RECORDING REQUESTED BY:**

Dustin Nichols, Esq.

**WHEN RECORDED MAIL TO:**

Denny Steelman, Trustee
26422 Lombardy Rd.
Mission Viejo, CA 92692

THIS SPACE FOR RECORDERS' USE ONLY

## TRUST TRANSFER DEED

(Trust Transfer Deed being    recorded to correct the legal description
of property originally conveyed by Instrument No. 2015000638622)

IT
3P
FF
CF
SM

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(ADDITIONAL RECORDING FEE APPLIES)

EXHIBIT 4    PAGE 72

RECORDING REQUESTED BY

LAW OFFICE OF DUSTIN I NICHOLS APC
WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:
DENNY R. STEELMAN, TRUSTEE
26422 Lombardy Rd.
Mission Viejo, CA  92692

APN:  398-182-21

Space above this line for Recorder's use

# TRUST TRANSFER DEED

**GRANT DEED (EXCLUDED FROM REAPPRAISAL UNDER PROPOSITION 13, I.E., CALIF. CONST. ART 13A§1 ET.SEQ.)**
THE UNDERSIGNED GRANTOR(S) DECLARE(S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
THERE IS NO CONSIDERATION FOR THIS TRANSFER.
DOCUMENTARY TRANSFER TAX IS $0/NO CONSIDERATION
☐ Computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale or transfer
☒ There is no Documentary transfer tax due.  (state reason and give Code § or Ordinance number)____
☐ Unincorporated area:            ☒ City of SANTA ANA

**This is a Trust Transfer under §62 of the Revenue an Taxation Code and Grantor(s) has (have) checked the applicable exclusion:**

    ☐   Transfer to a revocable trust;
    ☐   Transfer to a short term trust not exceeding 12 years with trustor holding the revision;
    ☒   Transfer to a trust where the trustor or the trustor's spouse is the sole beneficiary;
    ☐   Change of trustee holding title;
    ☐   Transfer from trust to trustor's spouse where prior transfer to trust was excluded from reappraisal and for
        the valuable consideration, receipt of which is acknowledge.
    ☐   Other:
**GRANTOR(S):    DENNY R. STEELMAN TRUSTEE OF THE STEELMAN FAMILY TRUST DATED MARCH 30, 1993,**

hereby **GRANT(S) TO: DENNY R. STEELMAN, TRUSTEE OF THE BYPASS TRUST UNDER THE 2010 STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010,**

the following described real property in the City of SANTA ANA, County of ORANGE, State of California:
        **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**
Commonly known as: 1326 N. Logan, Santa Ana, CA

Dated: ___*March 16*___ , 2016

Grantor:  DENNY R. STEELMAN, TRUSTEE

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA    *Orange*
COUNTY OF _____ }ss:
On ___*March 16*___ , 2016, before me, ___*M Gilbert*___ , a Notary Public, personally
                       (here insert name and title of the officer)
appeared ___*Denny R. Steelman*___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

M. GILBERT
COMM. #2091827
Notary Public · California
Orange County
My Comm. Expires Sep. 16, 2018

Signature ___*M Gilbert*___

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

EXHIBIT 4    PAGE 73

Exhibit "A"

APN  398-182-21

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF
ORANGE, CITY OF SANTA ANA, DESCRIBED AS FOLLOWS:

PARCEL A:

THOSE PORTIONS OF LOT 2, 3 AND 4 OF BLOCK "B" OF "SMITH'S SUBDIVISION OF
LOTS 19 AND THE EAST HALF OF LOT 18, SANTA ANA EAST", AS SHOWN ON A
MAP RECORDED IN BOOK 36, PAGE 75 OF MISCELLANEOUS RECORDS OF LOS
ANGELES COUNTY, CALIFORNIA, LYING SOUTHWESTERLY OF THE FOLLOWING
DESCRIBED LINE:

BEGINNING AT THE SOUTHEAST CORNER OF LOT 4 OF SAID BLOCK "B"; THENCE
ALONG THE EAST LINE OF SAID LOT 4 NORTH 00°01'07" WEST 42.99 FEET TO THE
TRUE POINT OF BEGINNING; THENCE NORTH 57°37'47" WEST 134.54 FEET TO THE
WEST LINE OF SAID LOT 2

EXHIBIT 4    PAGE 74

# EXHIBIT 5

Branch :A14   User :DTOG

RECORDING REQUESTED BY

LAW OFFICE OF DUSTIN I NICHOLS APC
WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:
DENNY R. STEELMAN, TRUSTEE
26881 WINDSOR DRIVE
SAN JUAN CAPISTRANO, CA 92675

APN:  0315-421-12, 13, 15/315-431-10

Recorded in Official Records, County of San Bernardino       11/02/2015
                                                            1:32 PM
**BOB DUTTON**                                              NC
ASSESSOR – RECORDER – CLERK                                  SAN
R Regular Mail

Doc#:  2015-0473029     Titles:  1     Pages:  2

| | |
|---|---|
| Fees | 18.00 |
| Taxes | 0.00 |
| Other | 6.00 |
| PAID | $24.00 |

Space above this line for Recorder's use

# TRUST TRANSFER DEED

GRANT DEED (EXCLUDED FROM REAPPRAISAL UNDER PROPOSITION 13, I.E., CALIF. CONST. ART 13A§1 ET.SEQ.)
THE UNDERSIGNED GRANTOR(S) DECLARE(S) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT:
THERE IS NO CONSIDERATION FOR THIS TRANSFER.
DOCUMENTARY TRANSFER TAX IS $0/NO CONSIDERATION
☐ Computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale or transfer
☒ There is no Documentary transfer tax due. (state reason and give Code § or Ordinance number) R&T  11930 ,
☐ Unincorporated area:      ☒ city of BIG BEAR CITY

**This is a Trust Transfer under §62 of the Revenue an Taxation Code and Grantor(s) has (have) checked the applicable exclusion:**

☐  Transfer to a revocable trust;
☐  Transfer to a short term trust not exceeding 12 years with trustor holding the revision;
☒  Transfer to a trust where the trustor or the trustor's spouse is the sole beneficiary;
☒  Change of trustee holding title;
☐  Transfer from trust to trustor's spouse where prior transfer to trust was excluded from reappraisal and for the valuable consideration, receipt of which is acknowledge.
☐  Other:

GRANTOR(S):  DENNY R. STEELMAN, A WIDOWER

hereby GRANT(S) TO: DENNY R. STEELMAN, TRUSTEE OF THE BYPASS TRUST UNDER THE 2010 STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010,

the following described real property in the City of BIG BEAR, County of SAN BERNARDINO, State of California:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

Commonly known as: 1045 Heritage Trail, Big Bear, CA

Dated:  _10-1- 2015_____ , 2015

Grantor:  DENNY R. STEELMAN

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA,
COUNTY OF  _ORANGE_____ }ss:

On _OCTOBER  01_, 2015, before me, _HALINA F OSINSKI_, a Notary Public, personally
                                    (here insert name and title of the officer)
appeared __DENNY R. STEELMAN___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

HALINA F. OSINSKI
Commission # 1992248
Notary Public · California
Orange County
My Comm. Expires Oct 22, 2016

Signature _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Branch :A14   User :DTOG

**EXHIBIT "A"**
**0315-421-12, 13, 15/315-431-10**

Lot 48 of Tract 16036-1 as per map recorded in Book 287, Page(s) 91-95, of Maps of Record, in the Office of the County Recorder of said County.

EXHIBIT 5    PAGE 76

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Weneta M.A. Kosmala, Chapter 7 Trustee of the Estate of Denny Roy Steelman | **DEFENDANTS**<br>Kevin Liebeck, as executor of the Estate of Denny Roy Steelman, Kevin Liebeck, as successor Trustee of the Survivor's Trust, as under 2010 Steelman Inter Vivos Trust, Shaunah Lynn Steelman, Jodi Denise Steelman |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>WEILAND GOLDEN GOODRICH<br>650 Town Center Drive, Suite 600, Costa Mesa, CA 92626<br>Telephone: (714) 966-1000 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>□ Debtor    ■ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor    □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ■ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1) For Declaratory Relief Regarding Property of the Estate Pursuant to 11 U.S.C. §541; (2) For Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 542 and 543; (3) To Avoid and Recovery Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550, and California Civil Code §§ 3439.04(a)(1), 3439.07 and 3439.09;...  [SEE ATTACHED]

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>□ 11-Recovery of money/property - §542 turnover of property<br>□ 12-Recovery of money/property - §547 preference<br>☑ 13-Recovery of money/property - §548 fraudulent transfer<br>□ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>□ 61-Dischargeability - §523(a)(5), domestic support<br>□ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>□ 63-Dischargeability - §523(a)(8), student loan<br>□ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>    (other than domestic support)<br>□ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>□ 21-Validity, priority or extent of lien or other interest in property | **FRBP 7001(7) – Injunctive Relief**<br>□ 71-Injunctive relief – imposition of stay<br>☑ 72-Injunctive relief – other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>□ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(8) Subordination of Claim or Interest**<br>□ 81-Subordination of claim or interest |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>□ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(9) Declaratory Judgment**<br>☑ 91-Declaratory judgment |
| **FRBP 7001(5) – Revocation of Confirmation**<br>□ 51-Revocation of confirmation | **FRBP 7001(10) Determination of Removed Action**<br>□ 01-Determination of removed claim or cause |
| **FRBP 7001(6) – Dischargeability**<br>□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>□ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>    actual fraud<br>□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>        **(continued next column)** | **Other**<br>□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>□ 02-Other (e.g. other actions that would have been brought in state court<br>    if unrelated to bankruptcy case) |

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||
|---|---|---|
| NAME OF DEBTOR<br>Denny Roy Steelman | BANKRUPTCY CASE NO.<br>8:16-bk-14227-ES ||
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Hon. Erithe Smith |
| RELATED ADVERSARY PROCEEDING (IF ANY) |||
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Faye C. Rasch |||
| DATE<br>October 12, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Faye C. Rasch ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**CAUSE OF ACTION** (CONTINUED):
(4) To Avoid and Recovery Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550, and California Civil Code §§ 3439.04(a)(2), 3439.07 and 3439.09; (5) To Avoid and Recovery Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550; (6) To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550; (7)To Preserve Avoided Transfers Pursuant to 11 U.S.C. § 551; and (8) For Injunction Pursuant to 11 U.S.C. § 105